**G.W. MARKHAM and Nancy Markham, Plaintiffs,**

**v.**

**PRUTSMAN MIRROR CO., Defendants.**

**PRUTSMAN MIRROR CO., Cross–Claimant Appellant,**

**v.**

**GROVES MANUFACTURING CO., Cross–Defendants Appellees.**

**No. 82A04–8901–CV–20.**

Court of Appeals of Indiana, Fourth District.

Jan. 24, 1991.

Keith A. Gaston, Thomas J. Grau, White & Raub, Indianapolis, for cross-claimant appellant.

D. Timothy Born, Fine & Hatfield, Evansville, for cross-defendants appellees.

CHEZEM, Judge.

### Case Summary

Cross-claimant/Appellant, Prutsman Mirror Co. (Prutsman), and Cross-defendant/Appellee, Groves Manufacturing Company (Groves), were dismissed as defendants in a underlying products liability action brought by G.W. Markham and Nancy Markham. Thereafter, Prutsman and

---

Groves filed cross motions for summary judgment as to Prutsman's cross-claim. It is from the granting of Groves' motion [1] for summary judgment that Prutsman now appeals. We affirm.

### Issue

While Prutsman raises several issues, we find that there is one determinative issue involved: whether Prutsman had standing to assert Vancraft's rights under the Purchase Agreement?

### Facts

The underlying action to this appeal involves a products liability suit brought by G.W. Markham (G.W.) and Nancy Markham (Nancy). G.W. was injured when he fell from a truck and impaled his wrist on an exposed bolt on the fender. PACCAR, Inc., a defendant in the underlying suit, installed the fenders when they manufactured the trucks. Tuckmar, a division of Groves, was the supplier of the fenders to PACCAR, Inc. Vancraft Manufacturing, Inc. (Vancraft), the parent company of Prutsman, purchased the assets of Tuckmar from Groves pursuant to an asset purchase agreement executed October 13, 1980. Following that sale, Tuckmar was made part of Prutsman by Vancraft. Prutsman was dismissed from the underlying products liability action, because the truck involved was assembled before Prutsman took possession of Tuckmar Assets.

The Asset Purchase Agreement, which included an indemnification provision, was drafted by Vancraft and submitted to Groves. Vancraft was to purchase the assets of Tuckmar but not assume its liabilities. Groves continued to operate Tuckmar until the closing of the Asset Purchase Agreement and the delivery of Tuckmar's assets to Vancraft on October 18, 1980. Under the terms of the agreement, Vancraft assumed no liabilities, specifically including products liability claims, for goods shipped by Groves prior to the transaction's closing date. Groves also agreed to reimburse Vancraft, on demand, for any payment, but not limited to, reasonable attorney's fees relating to the agreement's indemnification provision.

After receiving notice of Markham's suit, Vancraft contacted Groves. Prutsman's defense was submitted to Groves who refused to assume Prutsman's defense, or to indemnify it for its expenses because its agreement was with Vancraft. Prutsman then filed its cross-claim against Groves seeking indemnification, pursuant to Michigan contract law, for attorney's fees and expenses associated with defending Markham's claims and costs associated with its cross-claim against Groves. Both Groves and Vancraft are Michigan corporations, and the assets of Tuckmar, both before and after its acquisitions by Vancraft, were located in Michigan. The negotiations for the assets were conducted in Michigan and the final Asset Purchase Agreement and related bills of sale were executed in Michigan. G.W.'s accident is the only event that occurred in Indiana.

Additional facts will be supplied as needed.

### Discussion and Decision

■ The Asset Purchase Agreement between Vancraft and Groves provides in pertinent part:

16. *Benefits.* All the terms of this Agreement shall be binding upon and inure to the benefit of and be enforceable by, the respective legal representatives of James J. Groves and the *successors and assigns* of the Seller and the Buyer.

(Emphasis supplied).

There is no evidence of an assignment of the contract rights from Vancraft or Groves to Prutsman. Therefore, the question which must be determined is whether Prutsman is a successor to Vancraft. A successor, with reference to corporations,

... generally means another corporation which, through amalgamation, consolida-

---

**1.** In *Reeder v. Ramsey* (1984), Ind.App., 458 N.E.2d 682, n. 1, the first district cautioned counsel that loose regard for the rules of appellate procedure would not be countenanced in the future. We reiterate that warning to counsel as we note that the Record of Proceedings filed by Appellant does not contain the marginal notes required by Appellate Rule 7.2(A)(3)(a). Such disregard of the rules shall be subject to dismissal in the future.

tion, or other legal succession, becomes invested with rights and assumes burdens of first corporation.

*Black's Law Dictionary* 1283 (5th ed. 1979). In *Polius v. Clark Equipment Co.* (3rd Cir.1986), 802 F.2d 75, the court considered the issue of corporate succession. It observed:

The ... concepts of continuing life and accountability underlie the law governing corporate merger through the purchase of stock. Liability continues because the corporate body itself survives. A different rule applies when one corporation purchases the assets of another. Under the well-settled rule of corporate law, where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor.

*Id.* at 77.

Prutsman does not claim to be a corporate successor, it claims to "act as Vancraft's successor concerning the Tuckmar assets." However, the Assets Purchase Agreement clearly contemplates that the rights and benefits of the Agreement inure only to the corporate successors of Vancraft.

▇ While there are exceptions to the general rule that successors of corporate assets are not corporate successors in some products liability and labor cases, such as when the purchaser assumes liability; or the transaction amounts to a consolidation or merger; when the transaction is a fraudulent attempt to escape liability; or when the purchaser is merely a continuation of the seller, Prutsman was not a "successor to assets" of Vancraft under any of these exceptions. *See Polius, supra.* Prutsman was not a successor to all, or substantially all, of *Vancraft's* assets, which would be required under the exceptions. *See Swazye v. Smith* (E.D.Ark.1988) 694 F.Supp. 619. Successor in assets liability, under these exceptions, takes place only when the predecessor corporation no longer exists, such as when a corporation dissolves or liquidates in bankruptcy. *See Wewoka Petroleum Corp. v. Gilmore* (Okl.1957), 319 P.2d 285; *Wilkerson v. C.O. Porter Machinery Co.* (N.J.Super.L.1989), 237 N.J.Super. 282, 567 A.2d 598.

As Prutsman did not incur any of Vancraft's liabilities when Vancraft transferred Tuckmar's assets, it cannot claim to reap the benefits Vancraft possessed. Prutsman was not a successor under the Agreement, they were merely a transferee of a portion of Vancraft's assets. Had Vancraft wanted Prutsman to assert Vancraft's rights, they should have assigned those rights when they transferred the assets of Tuckmar to Prutsman.

Prutsman cites *Osgood v. Medical Inc.* (1987), Minn.App., 415 N.W.2d 896 for the proposition that it may assert Vancraft's rights under the agreement even though it is not a successor or assignee. In *Osgood,* the court concluded a subsidiary of a corporation was indemnified pursuant to an agreement between its parent corporation and a third party. In *Osgood,* however, the court came to that conclusion after deciding the contract between the parent and the third party was ambiguous because it did not refer to the parent's successors or assigns. *Id.* at 903. As the Asset Purchase Agreement refers to the successors and assigns of Vancraft, *Osgood* is inapplicable.

Because Prutsman is not a successor or assignee as designated under the Agreement, they do not have standing to assert Vancraft's indemnification rights against Groves. Therefore, the trial court properly granted summary judgment and, we can affirm a grant of summary judgment upon any basis found in the record. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154.

Affirmed.

STATON, J., concurs.

CONOVER, J., concurs in result.