

FILED

Mar 23 2018, 3:15 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 49S05-1710-PL-671

## The Care Group Heart Hospital, LLC,

*Appellant/Cross-Appellee (Defendant),*

–v–

## Roderick J. Sawyer, M.D.,

*Appellee/Cross-Appellant (Plaintiff).*

Argued: December 7, 2017 | Decided: March 23, 2018

Appeal from the Marion Superior Court,
No. 49D10-1208-PL-32513

The Honorable David J. Dreyer, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 49A05-1603-PL-580

**Opinion by Chief Justice Rush**

Justice David, Justice Massa, Justice Slaughter, and Justice Goff concur.

**Rush, Chief Justice.**

Parties are free to choose the terms of their agreements, and Indiana courts firmly defend this freedom of contract by enforcing agreed-upon terms.

Here, a doctor worked as a cardiologist and was also a member–owner of a hospital. He agreed with his employer and with the hospital that if his employment is "terminated for any reason"—that is, upon "any termination"—his ownership interest must be discontinued and redeemed.

We hold that "any termination" means just that—**any** termination, for **any** reason. The hospital thus did not breach the agreement by paying out the doctor's ownership interest after his employment terminated. It did, however, breach the agreement by delaying the payout, so the doctor is entitled to interest.

We also hold that the trial court did not abuse its discretion in awarding the doctor discovery sanctions of $27,233.19 in attorney fees and expenses.

We therefore affirm in part, reverse in part, and remand to the trial court.


**Facts and Procedural History**

Doctor Roderick Sawyer worked as a cardiologist for St. Vincent Medical Group, Inc. ("the Medical Group"). He was also a member–owner of The Care Group Heart Hospital, LLC ("the Hospital"). These two arrangements stood on three agreements: an employment agreement, an operating agreement, and a joinder agreement.

The employment agreement was between Dr. Sawyer and the Medical Group and governed his ten-year term of employment as a cardiologist. The operating agreement was between Dr. Sawyer and the Hospital and prescribed payout of his ownership interest in the Hospital. And the joinder agreement was among all three and conditioned Dr. Sawyer's continued ownership interest in the Hospital on his continued employment with the Medical Group. The joinder agreement specified,

> **[w]ithin ninety (90) days of any termination of employment**
> between Physician and [the Medical Group] (other than a
> termination pursuant to Section 4.4(c) of the Agreement), . . .
> **Physician and [the Hospital] shall cause Physician to be**
> **redeemed of his interest in [the Hospital]** such that, following
> such redemption, Physician shall have no continuing direct or
> indirect membership, ownership or investment interest in [the
> Hospital]. (emphases added)

The operating agreement then supplied a formula for calculating Dr. Sawyer's redemption amount at the time of his "involuntary withdrawal," which includes "the termination of employment or any material agreement [Dr. Sawyer] is a party to with the [Medical Group]."

The Medical Group terminated Dr. Sawyer's employment on July 22, 2011. Almost eight months later, the Hospital paid Dr. Sawyer $196,787—his redemption amount based on the operating agreement's formula.

Dr. Sawyer sued the Medical Group and the Hospital.[1] Against the Medical Group, he claimed tortious interference with business relationships; breach of the duty of good faith and fair dealing; and breach of the employment agreement, which caused him to lose both his employment and his ownership interest in the Hospital. Against the Hospital, he brought a breach-of-contract claim.

The Hospital filed dispositive motions throughout the litigation: for partial dismissal, for summary judgment, and for judgment on the evidence. Each motion relied on a plain reading of the joinder agreement, arguing no breach in the Hospital discontinuing and redeeming Dr. Sawyer's ownership interest. The trial court denied all these motions as to the joinder agreement, but it granted summary judgment to the Hospital as to the operating agreement. A jury returned a verdict against the Medical Group for $1.1 million, which has been paid to Dr. Sawyer. The

---

[1] Dr. Sawyer also sued Dr. Christopher Hollon for tortious interference with his employment agreement. The jury returned a verdict in Dr. Hollon's favor.

jury also returned a verdict of $470,000 against the Hospital for breach of the joinder agreement.

The Hospital moved to correct error, reiterating that there was no breach in discontinuing and redeeming Dr. Sawyer's ownership interest— only in delaying the payout after the 90-day deadline. The Hospital asked the court to correct the jury's $470,000 award by entering judgment on the evidence for $6,559.60—the interest on the five-month delay at the statutory rate of eight percent. The court denied the Hospital's motion.

Finally, the court ruled on the last of many discovery disputes that tangled nearly every stage of the litigation. It ordered the Hospital and Medical Group to pay a $27,233.19 sanction award to Dr. Sawyer.

The Hospital appealed the $470,000 judgment, arguing that the trial court erred in denying the Hospital's motions under Indiana Trial Rules 12(B)(6), 50, and 59(J). Dr. Sawyer cross-appealed, arguing that the trial court erroneously granted summary judgment to the Hospital as to the operating agreement, and that the $27,233.19 in attorney fees and expenses was an inadequate sanction.

The Court of Appeals affirmed both the partial summary judgment for the Hospital and the judgment against the Hospital.[2] *The Care Group Heart Hosp. v. Sawyer*, 80 N.E.3d 190, 210 (Ind. Ct. App. 2017). But it reversed the sanction award, remanding for re-evaluation and re-apportionment among the defendants. *Id.*

The Hospital and the Medical Group separately petitioned to transfer. We granted transfer, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).[3]

---

[2] We summarily affirm the Court of Appeals opinion affirming the trial court's grant of summary judgment as to the operating agreement. *See The Care Group Heart Hosp. v. Sawyer*, 80 N.E.3d 190, 203–05 (Ind. Ct. App. 2017); Ind. Appellate Rule 58(A)(2).

[3] Both before and after we granted transfer, attorneys for the Appellee filed repetitive motions, which we address in a separate order published the same date as this opinion.

**Standard of Review**

We face two questions. First, did a contract-interpretation error—which we review de novo—pervade the trial court's rulings on the Hospital's dispositive motions? *See State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016).

Second, did the trial court abuse its discretion in awarding discovery sanctions of $27,233.19 to Dr. Sawyer? *See McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993).

**Discussion and Decision**

We hold that under the plain meaning of the contract language, the Hospital did not breach the joinder agreement by discontinuing and redeeming Dr. Sawyer's ownership interest. We conclude, though, that the Hospital did breach the agreement by delaying the payout, so Dr. Sawyer is entitled to interest on the delay. Finally, we turn to the sanction award and find no abuse of discretion.

**I. The Hospital breached the joinder agreement only by delaying Dr. Sawyer's payout.**

The Hospital challenges the legal sufficiency of Dr. Sawyer's breach-of-contract claim. *See Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015). The claim's legal sufficiency depends on our interpretation of the parties' contract.

Before interpreting the parties' contract, however, we address a threshold matter—whether the Hospital waived its contract-interpretation argument. Dr. Sawyer gives three arguments for finding waiver.

First, he asserts that the Hospital did not raise the argument in its motions for partial dismissal and for summary judgment. But the Hospital did, in fact, raise the argument in its motion for partial dismissal, asserting that the joinder agreement "call[s] for the **mandatory** redemption of Plaintiff's membership interest in [the Hospital] following Plaintiff's termination of employment with [the Medical Group]." The Hospital then

relied on this plain reading of the joinder agreement in its later dispositive motions.

Dr. Sawyer also argues that the Hospital agreed to jury instructions on breach. But the Hospital did not need to object to the jury instructions to preserve its argument that the trial court erred in a contract-interpretation ruling that was outside the jury's purview. *See, e.g., City of St. Louis v. Praprotnik*, 485 U.S. 112, 119–120 (1988) (finding no obstacle to review a challenge, without an objection to jury instructions, where the focus of the challenge was "not on the jury instruction itself, but on the denial of [the party's] motions for summary judgment and a directed verdict").

Finally, he argues that the Hospital waited until after the jury returned its verdict to assert that the Hospital's breach was limited to its untimely payment. But the Hospital did not have to concede breach in untimeliness to preserve its argument that, under a plain reading of the contract language, there was no breach for paying out Dr. Sawyer's ownership interest.

The Hospital thus has not waived its contract-interpretation argument, and we turn to its merits.

Our goal in contract interpretation is "to determine the intent of the parties at the time that they made the agreement." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). We start with the contract language to determine whether it is ambiguous. *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017). If the language is unambiguous, we give it its plain and ordinary meaning in view of the whole contract, without substitution or addition. *See id.; State v. Int'l Bus. Machs. Corp.*, 51 N.E.3d 150, 160 (Ind. 2016).

## A. The parties' agreed-upon terms are unambiguous.

The joinder agreement says:

> WHEREAS, [the Medical Group] and the Physician [Dr. Sawyer] are parties to that certain Physician Employment Agreement of even date herewith (the "Agreement"); and

WHEREAS, Physician is a member of [the Hospital]; and . . .

WHEREAS, the parties hereto desire that Physician and [the Hospital] shall cause Physician's membership interest in [the Hospital] to be redeemed and Physician to no longer have any continuing direct or indirect membership, ownership or investment interest in [the Hospital] in the event that Physician's employment referenced in the [Employment] Agreement is terminated for any reason (other than a termination pursuant to Section 4.4(c) of the Agreement).

NOW THEREFORE, . . . the parties hereto agree as follows:

1. <u>Mandatory Redemption</u>. Within ninety (90) days of any termination of employment between Physician and [the Medical Group] (other than a termination pursuant to Section 4.4(c) of the Agreement), . . . Physician and [the Hospital] shall cause Physician to be redeemed of his interest in [the Hospital] such that, following such redemption, Physician shall have no continuing direct or indirect membership, ownership or investment interest in [the Hospital].

Both parties initially argued that we should give these terms their plain and ordinary meaning—though they disagreed on what that meaning is. Then at oral argument, Dr. Sawyer alternatively offered that we could find the terms ambiguous based on the trial court's rulings, the jury verdict, and the vacated Court of Appeals opinion.

But the parties' disagreement over the plain meaning does not create ambiguity. *Jernas v. Gumz*, 53 N.E.3d 434, 444 (Ind. Ct. App. 2016), *trans. denied*. Nor can the jury verdict or prior court rulings: after all, we review a court's interpretation of contract language de novo. *Jakubowicz*, 56 N.E.3d at 619. Thus, the plain meaning controls.

**B. The joinder agreement's plain language requires redemption upon any termination of Dr. Sawyer's employment with the Medical Group.**

Dr. Sawyer acknowledges that the joinder agreement requires buying out his interest after "any termination of employment." He contends, however, that "any termination" means only a termination permitted by the employment agreement's terms because the employment agreement and joinder agreement are really one contract.

We disagree. The joinder and employment agreements are not one contract, and the plain meaning of "any termination" is **any** termination, for **any** reason.

**1. The joinder agreement and employment agreement are not one contract.**

Dr. Sawyer urges that the two agreements are really one—and so should be construed together—because the Hospital and the Medical Group are one entity and because the joinder agreement incorporates the employment agreement.

We conclude otherwise. The Hospital and the Medical Group are separate entities, and the four corners of the joinder agreement do not encompass the employment agreement. Thus, the employment agreement does not affect the plain meaning of the joinder agreement's terms.

**a. We do not read the two agreements together under the contemporaneous document doctrine.**

Dr. Sawyer's argument that the Hospital and the Medical Group are really one entity invokes the contemporaneous document doctrine. This doctrine lets us, on a case-by-case basis, construe together contracts that relate to the same transaction or subject matter, if nothing indicates a contrary intention. *See Lily, Inc. v. Silco, LLC*, 997 N.E.2d 1055, 1068 (Ind. Ct. App. 2013), *trans. denied*. Despite the doctrine's title, the agreements may have been executed at different times. *Id.*

But when a litigant is not a party to one of the agreements, the contemporaneous document doctrine most likely will not apply. The reasons are straightforward: a contract generally cannot bind a nonparty,[4] and assent to the terms of the contract is a basic tenet of contract formation. *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1087 (Ind. 1993), *abrogated on different grounds by Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947 (Ind. 2005); *Carr v. Hoosier Photo Supplies, Inc.*, 441 N.E.2d 450, 455–56 (Ind. 1982).

Yet, these reasons are not automatically implicated by a disparity in the contracts' casts of parties. For instance, the doctrine may still apply where one contract has five parties while another has three. *See, e.g., McGann & Marsh Co. v. K & F Mfg. Co.*, 179 Ind. App. 411, 419, 385 N.E.2d 1183, 1188 (1979), *trans. denied*. The critical inquiry is whether the litigant who is absent from the cast of parties to one of the agreements is nevertheless "the same in essential respects" to a party to that agreement. *Id. Compare Murat v. South Bend Lodge No. 235 of Benevolent & Protective Order of Elks*, 893 N.E.2d 753, 757 (Ind. Ct. App. 2008), *trans. denied, and Estate of Spry v. Greg & Ken, Inc.*, 749 N.E.2d 1269, 1274 (Ind. Ct. App. 2001), *with McGann*, 179 Ind. App. at 419, 385 N.E.2d at 1188, *and GEICO Ins. Co. v. Rowell*, 705 N.E.2d 476, 481–82 (Ind. Ct. App. 1999), *and Ruth v. First Fed. Sav. & Loan Ass'n*, 492 N.E.2d 1105, 1108 (Ind. Ct. App. 1986).

Here, the Medical Group and Dr. Sawyer are parties to both the joinder and the employment agreements, but the Hospital is not a party to the employment agreement. Dr. Sawyer argues that the Hospital nonetheless **is** a party to the employment agreement because the Hospital and the Medical Group are really one entity. Yet, his position has not been entirely consistent.

---

[4] Certain traditional principles of state law—such as assumption, agency, veil piercing, alter ego, waiver, estoppel, third-party beneficiary, and incorporation by reference—may bind a nonparty to a contract. 17A Am. Jur. 2d Contracts § 400 (2016); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Warciak v. Subway Rests. Inc.*, 880 F.3d 870, 872 (7th Cir. 2018). We address below the principle that Dr. Sawyer raised: incorporation by reference.

In one breath, Dr. Sawyer acknowledges that the Medical Group and the Hospital are separate entities. In his amended complaint, he identifies them as different defendants, observes that the Medical Group is a corporation while the Hospital is a limited liability company, seeks to recover his lost ownership interest from both the Medical Group and the Hospital, and explains that his employment relationship with the Medical Group differs from his ownership relationship with the Hospital.

But in the next breath, he denies this separation as "simply a fiction." He argues that St. Vincent Health is, in his words, the "mother ship" with a controlling ownership of both the Hospital and the Medical Group. He also reasons that the Hospital and the Medical Group retained the same counsel through trial.

We disagree that the Hospital and the Medical Group are a single entity. As Dr. Sawyer has already acknowledged, the two parties have different business structures, are different defendants, and have different relationships with him. He has not tried to pierce the corporate veil, *see Reed v. Reid*, 980 N.E.2d 277, 301–02 (Ind. 2012), and sharing an attorney does not make the Hospital and the Medical Group one and the same, *see* Ind. Rules of Prof. Conduct Rule 1.7; *Williams v. State*, 724 N.E.2d 1070, 1079 (Ind. 2000).

Thus, the Hospital was not a party to the employment agreement. Cautious to not bind a nonparty to contract terms it did not assent to, we will not apply the contemporaneous document doctrine to construe the joinder and employment agreements together.

### b. The joinder agreement did not incorporate the entire employment agreement.

Dr. Sawyer offers a second theory for reading "any termination" as limited by the employment agreement: since the joinder agreement references and is attached to the employment agreement, it incorporates the employment agreement's terms. As explained below, the joinder agreement did not incorporate the entire employment agreement. Rather, it incorporates by reference only one provision of the employment agreement—Section 4.4(c)—which does not affect this case.

We interpret incorporated content as part of the agreement. *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1036 (Ind. Ct. App. 1998), *trans. denied*. For incorporation to occur, the incorporating contract must include a clear and explicit expression of intent to be bound by the auxiliary content. *See MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 907–09 (Ind. 2004); *Norwood Promotional Prods., Inc. v. Roller*, 867 N.E.2d 619, 625 (Ind. Ct. App. 2007), *trans. denied*. Mere reference to another contract is not enough. *See Bd. of Trs. of Purdue Univ. v. Eisenstein*, 87 N.E.3d 481, 502–03 (Ind. Ct. App. 2017), *trans. denied*. And simply attaching a document is neither necessary nor sufficient for incorporation. *See Kleen Leen, Inc. v. Mylcraine*, 174 Ind. App. 579, 583, 369 N.E.2d 638, 640–41 (Ind. Ct. App. 1977) (construing document that was "attached to **and** incorporated by reference" as part of the contract (emphasis added)); *accord Republic Bank v. Marine Nat. Band*, 53 Cal. Rptr. 2d 90, 92 (Cal. Ct. App. 1996).

We are also mindful that incorporation occurs in one direction: it pulls material into the incorporating contract. *See MPACT*, 802 N.E.2d at 909. While incorporation is unidirectional, it may be partial—incorporating some parts of a separate agreement while leaving others unincorporated. *See I.C.C.*, 695 N.E.2d at 1036. And material referenced for a particular purpose is incorporated for that purpose only. *Id.*

Here, the fact that the joinder agreement was attached as an exhibit to the employment agreement does not show that the joinder agreement incorporated the employment agreement. Indeed, it is the incorporat**ing** contract that must clearly and explicitly communicate the intent to incorporate the other writing. *MPACT*, 802 N.E.2d at 909. And although the terms of the joinder agreement reference the employment agreement multiple times, none of these references include an incorporation clause:

> WHEREAS, [the Medical Group] and [Dr. Sawyer] are parties to that certain Physician Employment Agreement of even date herewith (the "Agreement"); . . .

> WHEREAS . . . in the event that Physician's employment referenced in the [Employment] Agreement is terminated for

any reason (other than a termination pursuant to Section 4.4(c) of the [Employment] Agreement). . . .

Within ninety (90) days of any termination of employment between [Dr. Sawyer] and [the Medical Group] (other than a termination pursuant to Section 4.4(c) of the Agreement) . . .

These references in the joinder agreement do three things. First, they recognize that Dr. Sawyer and the Medical Group are parties to the employment agreement. Second, they identify the employment that Dr. Sawyer's ownership interest is conditioned on: his employment as a cardiologist for the Medical Group. And, finally, they specify that the one exception to "any termination" is defined by Section 4.4(c) of the employment agreement.[5]

The references to Section 4.4(c), though, incorporate only that subsection of the employment agreement and only for the purpose of identifying the sole termination that does not trigger the mandatory redemption provision—a termination that the parties agree did not occur here. *See I.C.C.*, 695 N.E.2d at 1036. In other words, no other portions of the employment agreement are incorporated by reference. The joinder agreement simply lacks the requisite expression of intent to incorporate the entire employment agreement.

**2. The plain meaning of "any termination" is any termination, regardless of the reason.**

Since the joinder agreement incorporated only an inapplicable section of the employment agreement, we cannot consider the employment agreement in determining the plain meaning of "any termination." *See AM Gen. LLC v. Armour*, 46 N.E.3d 436, 440 (Ind. 2015). It is true that we determine the meaning of a contract by considering all of its provisions, not individual words, phrases, or paragraphs read alone. *Evansville–*

---

[5] Section 4.4(c) applies when the Medical Group eliminates, and another company purchases, the doctor's practice unit and the doctor voluntarily ends his employment with the Medical Group.

*Vanderburgh Sch. Corp. v. Moll*, 264 Ind. 356, 363, 344 N.E.2d 831, 837 (1976). But when the contract terms are unambiguous, as they are here, we do not go beyond the four corners of the contract to investigate meaning. *Performance Servs., Inc. v. Hanover Ins. Co.*, 85 N.E.3d 655, 660 (Ind. Ct. App. 2017). In other words, we will not consider extrinsic evidence, even if that evidence is another agreement executed on the same day. *See, e.g.*, *AM Gen. LLC*, 46 N.E.3d at 440 (recognizing a redemption agreement executed on the same day as an employment agreement as extrinsic evidence for interpreting the disputed term in the employment agreement).

Thus, looking only within the four corners of the joinder agreement, the plain meaning of "any termination" is **any** termination, for **any** reason. This includes a termination that breaches the employment agreement. For example, had Dr. Sawyer terminated his employment in a way that breached the employment agreement, the joinder agreement would still require redemption of his ownership interest. Likewise, when the Medical Group terminated his employment in breach of the employment agreement—as the jury found here—the Hospital is required to buy out Dr. Sawyer's interest.

Adding the terms of Dr. Sawyer's reading—any termination **under the employment agreement**—would dramatically change the parties' agreement. For the Hospital to determine whether the mandatory redemption was triggered, it would have to investigate whether the termination resulted from a breach of the employment agreement. If the parties had intended that result, they could have said so. *See, e.g.*, *Wright Motors, Inc. v. Marathon Oil Co.*, 631 N.E.2d 923, 925–26 (Ind. Ct. App. 1994). They did not, and we will not add tacit terms into the parties' express, agreed-upon ones. *Int'l Bus. Machs. Corp.*, 51 N.E.3d at 160.

The Medical Group's termination of Dr. Sawyer's employment— authorized by the employment agreement or not—thus triggered the joinder agreement's mandatory redemption provision. The Hospital accordingly did not breach the agreement by discontinuing and paying out Dr. Sawyer's ownership interest. The trial court erred in holding otherwise and denying the Hospital's motion for partial dismissal on that

ground, and this legal error pervaded the court's later rulings on the Hospital's dispositive motions.

Importantly, Dr. Sawyer is not without a remedy for the discontinuation of his ownership interest. He properly sought to recover the ten-year value of this ownership interest as damages for the Medical Group's breach of the employment agreement, and he recovered from the Medical Group over $1.1 million.

### C. The Hospital breached the agreement by delaying payment to Dr. Sawyer, who is entitled to interest on the delay.

The only remaining issue of breach is the Hospital's delay in paying out Dr. Sawyer's interest.

The parties do not dispute that that the redemption amount was properly calculated; that the joinder agreement required redemption "[w]ithin ninety (90) days of any termination of employment"; or that the Hospital delivered Dr. Sawyer his redemption check nearly five months after the 90-day deadline. They thus agree that the delay was a breach, though Dr. Sawyer also acknowledges that he presented no evidence of the amount owed for that delay. The Hospital, on the other hand, asserted in its motion to correct error that Dr. Sawyer is entitled to statutory interest on the delay. We agree.

To receive a prejudgment interest award, a party needs to show only that the obligor breached the contract by failing to pay the appropriate amount by a particular time. *Thor Electric, Inc. v. Oberle & Assocs., Inc.*, 741 N.E.2d 373, 380 (Ind. Ct. App. 2000), *disapproved on other grounds by Inman v. State Farm Mut. Auto. Ins. Co.*, 981 N.E.2d 1202, 1205 (Ind. 2012); *see also Kosarko v. Padula*, 979 N.E.2d 144, 146 (Ind. 2012). An award of prejudgment interest in a contract action is appropriate purely as a matter

of law when the breach did not arise from tortious conduct,[6] the amount of the claim rests on a simple calculation, and the trier of fact does not need to exercise its judgment to assess the amount of damages. *Inman*, at 1204 & n.2; *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 578 (Ind. Ct. App. 2003), *trans. denied*. Where parties have not agreed on an interest rate, Indiana Code section 24-4.6-1-102 (2017) supplies a rate of eight percent. *See also* Ind. Code §§ 24-4.6-1-101, -103(b).

Here, the Hospital undisputedly should have paid Dr. Sawyer his $196,787 redemption amount five months earlier. At the statutory rate of eight percent, Dr. Sawyer is entitled to $6,559.60.

## II. The trial court did not abuse its discretion in awarding Dr. Sawyer $27,233.19 in attorney fees and costs.

Dr. Sawyer argues that the trial court abused its discretion in awarding him discovery sanctions of only $27,233.19 in attorney fees and expenses. He gives two reasons: that the court did not hold a hearing on the sanction award amount as required by Trial Rule 37(A), and that he is entitled to more than $27,233.19 for discovery abuses. We conclude that any error in not holding a hearing was harmless, and the $27,233.19 award was within the court's discretion.

Trial courts "stand much closer than an appellate court to the currents of litigation pending before them," so they are better positioned to assess and manage discovery matters. *Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012). They accordingly have "wide discretionary latitude," *Vanway v. State*, 541 N.E.2d 523, 527 (Ind. 1989), and their orders carry "a strong presumption of correctness," *Gonzalez v. Evans*, 15 N.E.3d 628, 633 (Ind. Ct. App. 2014), *trans. denied*; *see McCullough*, 605 N.E.2d at 180. We will not

---

[6] As we recognized in *Inman*, an award of prejudgment interest under the Tort Prejudgment Interest Statute (TPIS), Ind. Code §§ 34-51-4-1 to -9 (2017), is reviewed for abuse of discretion. *Inman*, 981 N.E.2d at 1204. But the TPIS "applies to any civil action arising out of tortious conduct," *id.* (emphasis omitted), and no party suggests that any breach of contract here was tortious. *See INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 577–78 (Ind. Ct. App. 2003), *trans. denied*.

overturn a decision absent clear error and resulting prejudice. *See* Ind. Trial Rule 61; *Vanway*, 541 N.E.2d at 527.

Here, discovery disputes hampered every stage of this protracted litigation, and the trial court sanctioned Dr. Sawyer and the defendants along the way. One of the trial court's discovery orders granted Dr. Sawyer's motion to compel and awarded expenses for pursuing the order. As litigation progressed, Dr. Sawyer moved for a contempt hearing on the defendants' failure to comply with the order compelling discovery. After consolidating several pending motions, the trial court granted Dr. Sawyer's motion for the contempt hearing. Following a hearing, the court issued an order indicating that "[a]ny expenses, fees, or costs shall be determined when submitted by Plaintiff," as discussed during the hearing.

Dr. Sawyer's fee petition asked for $450,000. The defendants responded that $27,233.19 of his requested fees were appropriate, but the other expenses fell outside the court's order and expenses permitted by Indiana Trial Rule 37. For example, Dr. Sawyer's petition included expenses for a separate *qui tam* lawsuit, a motion for default judgment that was denied, summary judgment filings, and a consumer complaint against another doctor. Dr. Sawyer replied that he should be compensated $445,500 for the defendants' "pervasive and systematic" delays in discovery "[d]uring the entire pendency of the case." But the trial court agreed with the defendants' assessment of Dr. Sawyer's submitted expenses.

Dr. Sawyer first claims that the trial court did not comply with Indiana Trial Rule 37(A), which requires the court, after granting a motion to compel discovery, to provide an opportunity for a hearing before awarding reasonable expenses incurred in obtaining the order. However, even if the court here failed to comply with that requirement, Dr. Sawyer has not shown prejudice—that the lack of a hearing affected the sanction amount.

Dr. Sawyer gave the trial court a detailed fee request, including over fifty pages of spreadsheets itemizing and describing the expenses he sought to recover. The defendants then submitted a response, categorizing Dr. Sawyer's submitted fees and explaining why many of them fell

outside of the court's discovery order. Dr. Sawyer replied, contesting the defendants' categorizations. Neither in his petition nor in his reply did Dr. Sawyer request another hearing. And at oral argument, when asked what information a hearing would have revealed that the record did not already supply, Dr. Sawyer's counsel responded only that he would have pointed out how the defendants' categorizations misalign with the court's order. This explanation, however, was included in Dr. Sawyer's reply. He thus has failed to show that the award would have been different had there been a hearing.

Dr. Sawyer next argues that the awarded amount is erroneously low. Again, this argument is without merit. The court had in the parties' filings a detailed account of the disputed fees, with reasons why those fees fell within or outside the scope of the court's orders and Rule 37. Given the compounded discovery issues of this protracted litigation, the detailed analysis of expenses presented to the trial court, and Dr. Sawyer's requests for expenses unrelated to discovery abuses, we find that Dr. Sawyer has not overcome the strong presumption of correctness in the court's award. We thus find no abuse of discretion and affirm the court's $27,233.19 sanction award.

**Conclusion**

We defend the freedom of contract by enforcing parties' agreed terms. Giving effect to the plain language of the parties' agreement here, we reverse the $470,000 judgment against the Hospital and remand for entry of judgment in the amount of $6,559.60 against the Hospital.

We also find no abuse of discretion in the trial court's award of attorney fees and expenses.

We therefore reverse in part, affirm in part, and remand to the trial court to enter judgment against the Hospital in the corrected amount.

David, Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT/CROSS-APPELLEE

John R. Maley
Peter J. Rusthoven
Leah L. Seigel
Barnes & Thornburg LLP
Indianapolis, Indiana


ATTORNEYS FOR PETITIONER ST. VINCENT MEDICAL GROUP, INC.

David B. Honig
Andrew B. Howk
Hall, Render, Killian, Heath & Lyman, P.C.
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE/CROSS-APPELLANT

Kevin W. Betz
Sandra L. Blevins
Benjamin C. Ellis
Betz + Blevins
Indianapolis, Indiana


ATTORNEYS FOR AMICUS CURIAE INDIANA LEGAL FOUNDATION INC.

Julia Blackwell Gelinas
Maggie L. Smith
Frost Brown Todd LLC
Indianapolis, Indiana


ATTORNEYS FOR AMICUS CURIAE DEFENSE TRIAL COUNSEL OF
INDIANA

Philip E. Kalamaros
Hunt Suedhoff Kalamaros LLP
Saint Joseph, Michigan

Lucy R. Dollens
Quarles & Brady LLP
Indianapolis, Indiana