## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 09 2018, 7:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Thomas E. Scifres
Thomas E. Scifres, P.C.
Salem, Indiana

ATTORNEYS FOR APPELLEE
TITAN TRANSFER, INC.

Darren A. Craig
Carly J. Tebelman
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Garrell "Gary" McCutcheon Jr., and Melissa K. McCutcheon, | August 9, 2018 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 10A05-1711-PL-2713 |
| v. | Appeal from the Clark Circuit Court |
| Pavco Trucking Co. Inc., and Titan Transfer, Inc., | The Honorable Andrew Adams, Judge |
| *Appellees-Defendants.* | Trial Court Cause No. 10C01-1505-PL-44 |

**Robb, Judge.**

# Case Summary and Issue

[1] Garrell and Melissa McCutcheon appeal following the trial court's grant of summary judgment to Titan Transfer, Inc. ("Titan"). The McCutcheons raise several issues on appeal which we consolidate and restate as whether the trial court erred when it granted summary judgment to Titan. Concluding that no genuine issues of material fact remained and that Titan was entitled to summary judgment as a matter of law, we affirm.

# Facts and Procedural History

[2] Pavco Trucking Company, Inc. ("Pavco"), operated a trucking company in Clarksville, Indiana. Pavco employed the McCutcheons to haul freight by truck. Pavco terminated the McCutcheons' employment on February 14, 2014.

[3] On March 1, 2014, Titan and Pavco executed the Purchase Agreement which enumerated a number of Pavco's assets that would be transferred to Titan in exchange for consideration of $40,000, an additional amount of cash equal to two weeks of Pavco's payroll, and a covenant-not-to-compete. The Purchase Agreement provided in relevant part in Section 3:

> [Pavco] represents and warrants to [Titan]:
>
> ***
>
> (b) There are no judgments, liens, claims, actions or proceeding [sic] against the assets being conveyed except as described herein.

Appellant's Appendix, Volume 2 at 87.

The Purchase Agreement further provided in Section 11:

> [Pavco] shall be responsible for all debts, obligations, leases and expenses of the business prior to February 28, 2014, at midnight, and shall indemnify and hold [Titan] harmless from any liability thereon. [Titan] shall be responsible for all debts, obligations and expenses of the business after said effective date and shall indemnify and hold [Pavco] harmless from any liability thereon.

*Id*. at 90.

[4] The McCutcheons filed suit against Pavco and Titan on April 27, 2015, alleging four claims of retaliatory discharge and wrongful termination. *Id*. at 19-24. Titan appeared in the suit and answered the complaint. Pavco did not appear. The McCutcheons ultimately obtained a default judgment against Pavco for $180,656.28. *Id*. at 79-80. On April 6, 2017, the McCutcheons filed proceedings supplemental against Titan seeking satisfaction of their default judgment, arguing that, as a term of the Purchase Agreement, Titan had agreed to assume liability for Pavco's debts and obligations after February 28, 2014.[1] *Id*. at 10, 83-84.

[5] On May 19, 2017, Titan moved for summary judgment, arguing in relevant part that Titan could not be held liable for any of the allegations in the

---

[1] As of the last date in the trial court's chronological case summary, no hearing on the McCutcheons' proceedings supplemental had occurred. Appellant's App., Vol. 2 at 15.

McCutcheon's complaint because Titan had never employed the McCutcheons and because Titan had not assumed any liability from Pavco arising from Pavco's employment of the McCutcheons. *Id*. at 10, 95. In support of its motion, Titan designated the Affidavit of Phillip Edwards, President of Titan, who averred that Pavco and Titan had no mutual stockholders, members of boards of directors, or shareholders. *Id*. at 121-22. Edwards also averred that the transfer of assets from Pavco to Titan did not involve the transfer of any stock. *Id*. at 122. In addition, Titan designated a certificate of existence from the Indiana Secretary of State showing that Pavco existed and was authorized to conduct business as of May 19, 2017. *Id*. at 136. The McCutcheons opposed Titan's motion and also moved for summary judgment, reasserting their argument that, pursuant to the Purchase Agreement, Titan had assumed liability for Pavco's debts and obligations after February 28, 2014, and that their default judgment was a debt that arose after that date. *Id*. at 140-52. As part of the evidence in support of their summary judgment filings, the McCutcheons designated their Affidavit in which they averred that after the transaction between Pavco and Titan, Titan continued to use Pavco's phone and facsimile numbers, office personnel, equipment, and accounts, and that no change in business had occurred. *Id*. at 137-38. The McCutcheons also designated the Purchase Agreement and an article from the Shelbyville Times-Gazette announcing Titan's "acquisition" of Pavco. *Id*. at 161-68, 178.

[6] On October 19, 2017, the trial court entered its order granting summary judgment for Titan, providing in relevant part:

> The McCutcheons' claims fail against [Titan] because the events alleged in the [complaint] occurred while the McCutcheons were working for [Pavco], and the McCutcheons never worked for [Titan]. Although [Titan] later acquired some of Pavco's assets, it did not assume any liability arising from Pavco's employment of the McCutcheons.

*Id*. at 16. This appeal ensued.

# Discussion and Decision

The McCutcheons contend that the trial court erred in concluding that Titan was entitled to judgment as a matter of law, arguing that Titan expressly agreed to assume liability for their default judgment against Pavco as part of the Purchase Agreement.[2]

# I. Standard of Review

When reviewing a trial court's grant or denial of summary judgment, we apply the same standard as the trial court. *Travelers Cas. & Sur. Co. v. United States Filter Corp.*, 895 N.E.2d 1172, 1176 (Ind. 2008). "We must decide whether there is a genuine issue of material fact that precludes summary judgment and, if not, whether the moving party is entitled to judgment as a matter of law." *Id.* (citing Ind. Trial Rule 56(C)). "We also construe the designated evidence in a light most favorable to the nonmoving party." *Id.*

---

[2] Pavco does not participate in this appeal.

Matters of contract interpretation are particularly well-suited for de novo appellate review because they generally present questions purely of law. *In re Indiana State Fair Litig.*, 49 N.E.3d 545, 548 (Ind. 2016). A contract may be construed on summary judgment if it is not ambiguous or uncertain, or if any ambiguity may be resolved without the aid of a factual determination. *Id*. "The meaning of a contract is a question for the factfinder, precluding summary judgment, only where interpreting an ambiguity requires extrinsic evidence." *Id*.

## II. Assumption of Liability

### A. Asset Only Transfer

In Indiana[3] the general rule concerning corporate successor liability is that when one corporation simply purchases the assets of another, as opposed to purchasing the stock of another, the buyer does not assume the debts and liabilities of the seller. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1233 (Ind. 1994). There are four generally recognized exceptions to the rule, namely where (1) there is an implied or express agreement to assume the obligation; (2) a fraudulent sale of assets was done in order to escape liability; (3) the purchase

---

[3] The Purchase Agreement contained a choice of law provision dictating that the Agreement would be interpreted according to Tennessee law. Appellant's App., Vol. 2 at 92. However, in their appellate briefs, both parties cite Indiana law only. The McCutcheons assert that Titan acknowledged in a summary judgment pleading that no conflict exists between Indiana and Tennessee law on contract interpretation. Brief of Appellant at 13 n.2. However, the McCutcheons did not include that pleading in their Appendix. As neither party has invoked the Purchase Agreement's choice of law provision, we will interpret the Agreement according to Indiana law.

was actually a de facto consolidation or merger; and (4) the purchaser is a mere continuation of the seller. *Id.* It is the first of these exceptions upon which the McCutcheons rely, arguing that Titan expressly agreed through the Purchase Agreement to assume Pavco's liability for their judgment. Brief of Appellant at 15. The McCutcheons contend that there "is disagreement on the issue of whether this was simply, and solely, an 'asset purchase,'" *id.* at 14, but they also acknowledge that the transfer of assets from Pavco to Titan did not involve the transfer of any stock, *id.* at 17. In their reply to Titan's brief on appeal, the McCutcheons acknowledge that Titan did not assume all of Pavco's debt as a result of the asset transfer. Appellant's Reply Brief at 6. Thus, inasmuch as the McCutcheons argue that Titan assumed liability for their judgment strictly because of the nature of the transfer of assets from Pavco to Titan, we reject that argument as waived. *See Reed v. Reid*, 980 N.E.2d 277, 296-97 (Ind. 2012) (holding that failure to comply with Indiana Appellate Rule 46(A)(8) by failing to support a contention with cogent reasoning, citation to authority, and citation to the record results in waiver of the issue).

[11] As an additional preliminary matter, we note that *Winkler*, which is cited by both parties, itself relied on *Markham v. Prutsman Mirror Co.*, 565 N.E.2d 385 (Ind. Ct. App. 1991), as authority for the above-referenced rule of successor liability and its exceptions. *Winkler*, 638 N.E.2d at 1233. In enunciating the rule and its exceptions, the *Markham* court also held that "[s]uccessor in assets liability, under these exceptions, takes place only when the predecessor corporation no longer exists, such as when a corporation dissolves or liquidates

in bankruptcy." *Markham*, 565 N.E.2d at 387. However, nothing in the authority cited by the court in *Markham* for this proposition explains why this should be so where two corporate entities have expressly contracted for one to assume the other's liabilities. *See id.* (citing *Wewoka Petroleum Corp. v. Gilmore*, 319 P.2d 285, 289 (Okla. 1957) (holding that, pursuant to state statute, voluntarily dissolved corporations continue to exist for purposes of being sued); and *Wilkerson v. C.O. Porter Mach. Co.*, 567 A.2d 598, 600-09 (N.J. Super. Law Div. 1989) (examining the applicability of New Jersey's product-line theory of successor liability to the purchase of assets from predecessor corporation's bankruptcy)). In *Winkler*, our supreme court did not adopt this portion of *Markham*, and we see no reason to disregard a contractual agreement made by two corporate entities in an arms-length transaction simply because the predecessor corporation continues to exist. As such, we address the issue of whether Titan agreed to assume Pavco's liability for the instant judgment as part of the Purchase Agreement without reference to Pavco's continued corporate viability.

## B. The Purchase Agreement

[12] The goal of the interpretation of contracts is to give meaning and effect to the intention of the parties as expressed in the language of the contract itself. *U.S. Fidelity & Guar. Co. v. Warsaw Chem. Co.*, 990 N.E.2d 18, 21 (Ind. Ct. App. 2013), *trans. denied*. We construe the instrument as a whole, giving effect to every portion, if possible. *Id*. Furthermore, we attempt to construe contractual provisions so as to harmonize the agreement. *Grimes v. Crockrom*, 947 N.E.2d

452, 455 (Ind. Ct. App. 2011). We discern the meaning of a contract by considering all of its provisions, not individual words, phrases, or even paragraphs read alone. *Care Grp. Heart Hosp., LLC, v. Sawyer, M.D.*, 93 N.E.3d 745, 756 (Ind. 2018). We first examine the contract language to determine whether it is ambiguous. *Id*. at 752. If the language is unambiguous, we give the words used their plain and ordinary meaning in the context of the whole contract, without substitution or addition. *Id*.

[13] Both parties contend that the Purchase Agreement is unambiguous, *see* Br. of Appellant at 19-22; Appellee's Brief at 11-14, and we agree. Pursuant to the plain wording of the contract, Pavco was to be responsible for all "obligations" of the business which existed prior to February 28, 2014. Appellant's App., Vol. 2 at 90. The word obligation "has many wide and varied meanings [and] may refer to anything that a person is bound to do or forbear from doing, whether the duty is imposed by law, contract, promise, social relations, courtesy, kindness, or morality." Black's Law Dictionary (10th ed. 2014). In addition, Pavco unambiguously warranted to Titan in the Purchase Agreement, "There are no . . . claims . . . against the assets being conveyed except as described herein." Appellant's App., Vol. 2 at 87. A claim may be defined as a cause of action. *Id*. The word "claim" as used in the Purchase Agreement is not modified by any language limiting its meaning to claims which were already filed. No claims against Pavco's assets were otherwise described in the Purchase Agreement. *Id*. at 86-94.

[14] Reading these terms and provisions together so as to give effect to each, the warranty provision indicates that parties intended that no existing claims were being transferred from Pavco to Titan as part of the transfer of assets. A claim against a party falls within the general definition of "obligation" because the party's legal duties are implicated by the accrual of a cause of action. The McCutcheons had a cause of action against Pavco as of the date of their termination on February 14, 2014. *See Jean v. Dugan*, 20 F.3d 255, 265 (7th Cir. 1994) (applying Indiana law and holding that a claim for retaliatory discharge accrues upon termination of employment). Since the McCutcheons' claim against Pavco was an obligation of the business that existed prior to February 28, 2014, it fell within the obligations reserved to Pavco pursuant to the Purchase Agreement and for which Pavco agreed to hold Titan harmless. Any other reading of the Purchase Agreement would render Pavco's warranty pertaining to claims meaningless and ineffective. The McCutcheons do not address the warranty provision pertaining to claims. Rather, they invite us to discern the meaning of the Purchase Agreement by concentrating solely upon Section 11 in isolation, *see* Appellant's Reply Br. at 5, and by considering their action against Pavco and Titan only in its last incarnation when it was reduced to judgment. This invitation runs afoul of the rule of contract construction which requires us to discern the intent of the parties by examining the contract as a whole. *Care Grp. Heart Hosp.*, 93 N.E.3d at 756. Titan did not expressly assume Pavco's liability for any claim resulting from Pavco's employment of the McCutcheons, and the trial court's grant of summary judgment was proper because Titan was entitled to summary judgment as a matter of law.

# Conclusion

Concluding that Titan did not expressly assume liability for a claim that existed against Pavco prior to the effective date of the Purchase Agreement, we affirm the trial court's grant of summary judgment to Titan.

Affirmed.

Najam, J., and Altice, J., concur.