

FILED

Jun 28 2023, 1:49 pm

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-CP-59

## Performance Services, Inc.,
*Appellant*

–v–

## Randolph Eastern School Corporation,
*Appellee*

Argued: April 27, 2023 | Decided: June 28, 2023

Appeal from the Randolph Circuit Court
No. 68C01-2102-PL-87
The Honorable Marianne L. Vorhees, Special Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-CP-361

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, Goff, and Molter concur.

**Rush, Chief Justice.**

An old proverb provides that those who sow the wind shall reap the whirlwind. This observation that actions have consequences is particularly apt when, as here, a company contracts with a school corporation for a wind-turbine project. Although Indiana law affords school corporations significant authority, their ability to invest public funds is limited by statute. And if they exceed their statutory authority when contracting with a company, the contract is void and unenforceable.

Here, a school corporation contractually agreed to make biannual payments to a company for access to a wind turbine. And in that contract, the company agreed to provide the school corporation with financial benefits tied to the turbine's net revenue. We hold that the contract constitutes an unauthorized investment under Indiana law, rendering the contract void and unenforceable. We therefore affirm the trial court's grant of summary judgment to the school corporation.

## Facts and Procedural History

In 2008, Performance Services, Inc. approached Randolph Eastern School Corporation (RESC) about constructing a wind turbine. Following school-board approval the following year, the parties entered into a contract to undertake the project.

Performance agreed to construct and operate the turbine, sell the generated power and renewable energy credits on the open market, "pay all costs of operating, maintaining and insuring" the turbine, receive the applicable tax credits, and provide RESC with access to the turbine for educational purposes. "In exchange for such access," RESC agreed to pay Performance $77,000 biannually, and the school corporation would receive "a credit against each payment" in an amount based on a percentage of the turbine's net revenue. Additionally, if the net revenue exceeded the payment, Performance agreed to place the first $10,000 in an "operating reserve account" and then remit to RESC any excess amounts.

As RESC's then-superintendent explained, if the project performed "as expected," the school corporation would receive "a surplus each year,"

ultimately equaling "$3.1 million over and above the payments" at the end of twenty-five years. The parties subsequently twice amended the contract—first to specify the payments would continue for twenty years, and second to alter the payment due dates.

Following execution of the contract and its amendments, the State Board of Accounts (SBOA) informed Performance that school corporations lack the statutory authority to invest in a wind-turbine project. The SBOA also conveyed this position to all state public school corporations, cautioning against undertaking such projects as a way to generate extra revenue. Later, in auditing RESC, the SBOA determined the school corporation "invested in a wind turbine in 2009," characterizing the project as an investment "not authorized by statute" and noting that RESC "did not receive any of its energy needs from the wind turbine."

RESC ultimately never made any payments to Performance despite receiving invoices in 2016 and 2021. Shortly after receiving the second invoice, RESC brought a declaratory judgment action seeking to void the contract, alleging in part that it constituted an illegal investment. In response, Performance asserted the contract was "legally valid and binding," and it also filed counterclaims. RESC moved for summary judgment on all claims and counterclaims, again contending the contract was "unenforceable because RESC lacked the statutory authority to invest in any wind turbine project." Performance maintained the contract's legality and moved for partial summary judgment on its counterclaims for breach of contract and suit on account.

Following a hearing, the trial court granted RESC's motion for summary judgment and denied Performance's cross-motion for summary judgment. The trial court concluded the contract was void and unenforceable, reasoning it constituted an unauthorized investment. Performance appealed.

A divided panel of our Court of Appeals reversed. *Performance Servs., Inc. v. Randolph E. Sch. Corp.*, 196 N.E.3d 208, 210 (Ind. Ct. App. 2022). The majority reasoned, in relevant part, that the contract was not for an investment because the parties' relationship "never amounted to more than the School Corporation owing payments for services rendered by

Performance." *Id.* at 216. Judge Brown dissented, believing the contract "reflects an illegal investment . . . in which the School Corporation sought a financial return." *Id.* at 221 (Brown, J., dissenting).

RESC petitioned for transfer, which we granted, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).[1]

## Standard of Review

We review summary judgment decisions de novo, using the same standard as the trial court. *Griffin v. Menard, Inc.*, 175 N.E.3d 811, 812 (Ind. 2021). Summary judgment is appropriate only if the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Here, the parties agree there are no disputed issues of material fact. Thus, the sole issue is whether the contract is illegal as a matter of law. Resolving this issue requires us to engage in both statutory and contract interpretation—exercises we undertake de novo. *Lake Imaging, LLC v. Franciscan All., Inc.*, 182 N.E.3d 203, 206 (Ind. 2022).

## Discussion and Decision

Contracting parties generally have broad latitude to bind themselves to specific terms. *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 749 (Ind. 2018). But that latitude is restricted by statute when one of the parties is a governmental entity, such as a school corporation. *See City of Frankfort v. Logan*, 168 Ind. App. 81, 341 N.E.2d 510, 514 (1976). Indeed, if these entities exceed their statutory authority, the contract is void and unenforceable "no matter what hardship it may work, or how strong the equities may appear." *Pipe Creek School Twp. v. Hawkins*, 49 Ind. App. 595,

---

[1] We summarily affirm the portion of the Court of Appeals' opinion holding that the trial court did not abuse its discretion in denying Performance's motion to strike RESC's designated evidence from the SBOA. *See* App. R. 58(A)(2).

97 N.E. 936, 937 (1912); *see also Bd. of Sch. Comm'rs of City of Indianapolis v. State ex rel. Wolfolk*, 209 Ind. 498, 199 N.E. 569, 572 (1936). Thus, regardless of how attractive a project may be, private parties must pay close attention to the laws limiting a governmental entity's authority when contracting with them. *Peoples State Bank v. Benton Twp.*, 28 N.E.3d 317, 324 (Ind. Ct. App. 2015).

Our Legislature has imposed such limits on school corporations in Indiana's Home Rule and Public Investment Acts. In relevant part, the Home Rule Act withholds from school corporations "[t]he power to invest money, except as expressly granted by statute." Ind. Code § 36-1-3-8(a)(11); *see also id.* § 20-26-3-7(1). And while the Public Investment Act grants school corporations the power to invest public funds in various ways, a wind turbine is not one of them. *See* I.C. ch. 5-13-9.

Relying on these statutes, RESC argues its contract with Performance is void because the school corporation exceeded its authority by investing money in the wind-turbine project "to earn a financial return." Performance, on the other hand, asserts that RESC's payments were "not tied to any financial return" but were instead to provide "physical access to the wind turbine as well as access to the turbine's data for educational and vocational training purposes." We agree with RESC.

We first hold that the statutorily undefined term "invest" in the Home Rule and Public Investment Acts means to commit money in hopes of obtaining a financial return. We then apply that definition and conclude the contract between RESC and Performance was an illegal investment by a school corporation because RESC in part sought to reap a financial benefit. Because RESC was not statutorily authorized to invest public funds in this way, we hold the contract is void and unenforceable as a matter of law. We therefore affirm the trial court's grant of summary judgment to RESC.

# I. Under Indiana's Home Rule and Public Investment Acts, "invest" means to commit money in hopes of obtaining a financial return.

The parties acknowledge that neither the Home Rule Act nor the Public Investment Act define the term "invest," so each supplies its own definition. RESC directs us to the definition of "invest" in Black's Law Dictionary, while Performance urges us to use the four-part test for an "investment contract" applicable in the context of securities law, *see S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). Each party's position misses the mark.

When a statutory term is undefined, our Legislature has instructed "us to interpret the term using its 'plain, or ordinary and usual, sense.'" *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019) (quoting I.C. § 1-1-4-1(1)). In doing so, we "generally avoid legal or other specialized dictionaries," turning "instead to general-language dictionaries." *Id*. One such dictionary defines "invest" as "to put (money) to use, by purchase or expenditure, in something offering potential profitable returns, as interest, income, or appreciation in value." Webster's Unabridged Dictionary 1004 (2d ed. 2001). Another similarly defines "invest" as "[t]o commit (money or capital) in order to gain a financial return." The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=invest (last visited June 28, 2023).

Until our Legislature provides otherwise, we adopt these definitions of "invest" for purposes of the Home Rule and Public Investment Acts. We thus understand "invest" as used in those Acts to mean committing money in hopes of obtaining a financial return. We now apply this definition here.

## II. Because RESC contracted to invest in the turbine, the contract is void and unenforceable.

The question is whether, under the parties' contract, RESC agreed to commit money in hopes of obtaining a financial return. Recall that RESC agreed to pay Performance $77,000 biannually in exchange for access to the turbine and its data for educational purposes. According to Performance, RESC agreed to make payments in exchange for this tangible benefit and, thus, did not "invest" any money. However, we ascertain the parties' intent by reviewing the contract in its entirety. *Sawyer*, 93 N.E.3d at 752. And doing so here demonstrates RESC committed to paying up to $154,000 annually for twenty years in part with the expectation of obtaining a financial return.

Specifically, section 2 of the contract reveals Performance would treat RESC's payments as revenue—just like the profits Performance would earn from its sale of power generated by the turbine and its sale of renewable energy credits—to be used to "pay all costs of operating, maintaining and insuring the Facility." And section 5 entitled RESC to "a credit against each payment in the amount of the net revenues experienced by [Performance] in the operation of" the turbine during each six-month period. For the first six years, RESC's credit would be 100% of the net revenue, with the percentage for the following years fluctuating between 25% and 75%. Additionally, if the "net revenues exceed[ed] the amount of the payment due from" RESC, Performance agreed to deposit "$3500 per year into an operating reserve account" until the balance reached $10,000. Performance would then remit to RESC "[a]ny net revenues not needed for deposit in the operating reserve account . . . in the form of payment in lieu of taxes." Thus, under the contract, RESC committed money to Performance that it would use to sell power and renewable energy credits and then convert those sales into financial benefits for RESC.

While we recognize that RESC's access to the turbine constitutes an immediate, tangible benefit, this benefit does not preclude the contract from also constituting an investment. Indeed, the contract contemplated that RESC's payment would vary depending on the turbine's financial

performance. And the contract also entitled RESC to excess net revenue generated by the turbine. Simply put, though RESC committed money to Performance in exchange for access to the turbine, RESC also committed money in hopes of obtaining a financial return. As a result, we conclude the contract constitutes an illegal investment by a school corporation under the Home Rule Act and the Public Investment Act. And we decline to address whether the offending portions of the contract are severable as neither party, at any stage, has ever taken that position. *Cf. Harbour v. Arelco, Inc.*, 678 N.E.2d 381, 385 & n.4 (Ind. 1997). This is not surprising, as the record is simply devoid of evidence that the parties would have executed the agreement but for RESC's potential to reap financial benefits. Thus, we hold the contract is void and unenforceable. RESC is therefore entitled to judgment as a matter of law.

# Conclusion

Because the contract between RESC and Performance constituted an investment unauthorized by statute, the contract is void and unenforceable. We therefore affirm the trial court's grant of summary judgment to RESC.[2]

Massa, Slaughter, Goff, and Molter, JJ., concur.

---

[2] We thank amicus curiae Indiana School Boards Association for its helpful brief.

ATTORNEYS FOR APPELLANT
William E. Kelley, Jr.
Sean T. Devenney
Drewry Simmons Vornehm, LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEE
Robert W. Rund
Joseph P. Rompala
James E. Zoccola
Matthew S. Tarkington
Lewis & Kappes, P.C.
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE INDIANA SCHOOL BOARDS
ASSOCIATION
Kent M. Frandsen
Parr Richey Frandsen Patterson Kruse LLP
Lebanon, Indiana