**AMAX COAL COMPANY,**
Appellant–Defendant,

v.

**Ernestine ADAMS, Jeff Brannon, Erlinda Brannon, Devaughn Combs, Mary Combs, Jack Cottingham, Eileen Cottingham, David Fulford, Marion Fulford, Herman Hobbs, Carolyn Hobbs, Charles Neff, Yolanda Neff, James Neff, Pamela Neff, Richard Pigg, Donna Pigg, Omer Singleton, June Singleton, Byrle White, Doris P. White, William Yates and Carol Yates, Appellees–Plaintiffs.**

No. 60A04–9108–CV–275.

Court of Appeals of Indiana,
Fourth District.

Aug. 11, 1992.

G. Daniel Kelley, Jr., W.C. Blanton, Edward P. Steegmann, Ice, Miller, Donadio & Ryan, Indianapolis, for appellant-defendant.

Max E. Goodwin, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, David H. Pope, Carr, Tabb & Pope, Atlanta, Ga., for appellees-plaintiffs.

CONOVER, Judge.

In these consolidated interlocutory appeals, Defendant–Appellant Amax Coal Company (Amax) questions the Owen Circuit Court's orders favoring Plaintiffs–Appellees Adams, et al. (the Adams group), which require Amax to produce certain papers and answer certain interrogatories.

We affirm in part and reverse in part.

These appeals present the following restated issues:

whether the Adams group's "contention-type" requests for production of "all documents", and interrogatories requesting Amax to state "all facts supporting" or "relating to" its pleading denials and affirmative defenses properly/improperly

a) were served at the beginning of discovery,

b) seek the defense attorneys' mental impressions and work product,

c) designate the documents to be produced "with reasonable particularity," and

d) are so vague and ambiguous they impose an undue burden upon Amax's attorneys when attempting to comply.

*Sua sponte*, we raise an additional issue:

whether cross-condemnation by each briefing counsel of their opposing counsels' off-record conduct, motivation, and supposed bad manners in the conduct of discovery, is appropriate material for appellate briefs.

Amax owns and works its Minnehaha surface coal mine in Sullivan County, Indiana. The Adams group owns houses near the mine. Basically, its members claim (a) residential damage over the past six years, and personal emotional distress, all caused by Amax's blasting operations at Minnehaha, and (b) some surface subsidence due to its water pumping at that site. The group's lawsuit against Amax presently pends in the Owen Circuit Court.

When Amax answered the complaint, it denied certain allegations and asserted affirmative defenses. The Adams group then filed interrogatories and requests for

production seeking "all facts" and all documents "supporting" or "relating to" Amax's pleading denials and affirmative defenses. Amax's objections thereto were overruled by the trial court. These appeals result.

We must first discuss the quality of briefing by counsel in this appeal. Throughout the parties' briefs, they have launched rhetorical broadsides at each other which have nothing to do with the issues in this appeal. Counsels' comments concern their opposite numbers' intellectual skills, motivations, and supposed violations of the rules of common courtesy. Because similar irrelevant discourse is appearing with ever-increasing frequency in appellate briefs, we find it necessary to discuss the easily-answered question of whether haranguing condemnations of opposing counsel for supposed slights and off-record conduct unrelated to the issues at hand is appropriate fare for appellate briefs.

At the outset, we point to the obvious: the judiciary, in fact and of necessity, has absolutely no interest in internecine battles over social etiquette or the unprofessional personality clashes which frequently occur among opposing counsel these days. Irrelevant commentary thereon during the course of judicial proceedings does nothing but waste valuable judicial time. On appeal, it generates a voluminous number of useless briefing pages which have nothing to do with the issues presented, as in this appeal.

Further, appellate counsel should realize, such petulant grousing has a deleterious effect on the appropriate commentary in such a brief. Material of this nature is akin to static in a radio broadcast. It tends to blot out legitimate argument.

On a darker note, if such commentary in appellate briefs is actually directed to opposing counsel for the purpose of sticking hyperbolic barbs into his or her opposing numbers' psyche, the offending practition-

er is clearly violating the intent and purpose of the appellate rules. In sum, we condemn the practice, and firmly request the elimination of such surplusage from future appellate briefs. *See,* generally, *Clark v. Clark* (1991), Ind.App., 578 N.E.2d 747, 748–749.

■ When reviewing a trial court's orders concerning discovery matters, the sole question before us is whether the trial court abused its discretion in that regard. *Schierenberg v. Howell–Baldwin* (1991), Ind.App., 571 N.E.2d 335, 337. "An abuse of discretion occurs when the trial court reaches a conclusion against the logic and natural inferences to be drawn from the facts of the case." *Schierenberg; DeMoss Rexall Drugs v. Dobson* (1989), Ind.App., 540 N.E.2d 655, 656.

■ Amax first complains the Adams group's "overbroad" "contention-type" interrogatories and second request for production (hereafter, discovery), asking Amax to identify all facts and documents tending to establish those facts which form the basis for Amax's pleading denials and affirmative defenses, were prematurely filed at the beginning of the discovery process.[1] It argues such discovery is "grossly" premature without really pinpointing why it makes that claim in this case. Amax merely cites *In re: Convergent Technologies Securities Litigation* (1985), N.D.Cal., 108 F.R.D. 328, a federal trial court case. There the court said:

On the other hand, there is a fundamental reason to believe that the early knee-jerk filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings *is a serious form of discovery abuse.* Such comprehensive sets of contention interrogatories can be almost mindlessly generated, can be used to impose great burdens on opponents, and can generate a great deal of counter-

---

1. Amax cites as a typical example of such requested discovery Interrogatory No. 1. It reads:
   1. As to each plaintiff, state in detail the facts supporting your denial of paragraph 19 of the Complaint, to-wit: "19. Amax's surface coal mining operations at its Minnehaha mine

are located sufficiently near plaintiffs' property to have caused injuries to plaintiffs and damages to plaintiffs' property as described herein." (R. 418).
Brief of Appellant at 22.

productive friction between parties and counsel. (Emphasis supplied).

*Id.* 108 F.R.D. at 337. However, that is but one small quote from the trial court's 21 page opinion wherein Magistrate Brazil exhaustively analyzes the use and timing of "contention" interrogatories. Earlier in that opinion he mentions the proponent's argument that the use of contention interrogatories which track the responder's pleading allegations and affirmative defenses filed early in the discovery process help to focus discovery, contain discovery excesses, and expose frivolous or unsupportable claims.

Responding to those arguments, Magistrate Brazil said:

Because the benefits that can flow from clarifying and narrowing the issues in litigation *early* in the pretrial period are potentially significant, and because it is possible that in some circumstances answers to some kinds of contention interrogatories might contribute meaningfully toward these objectives, it would be unwise to create a rigid rule, even if applicable to only certain categories of cases, that would always protect parties from having to answer contention interrogatories until some predetermined juncture in the pretrial period. (Emphasis in original).

*Convergent Technologies,* 108 F.R.D. at 337. That court then placed a "burden of justification" on the propounder for the use of contention interrogatories early in the pre-trial discovery proceedings. The final thrust of Magistrate Brazil's exhaustive analysis of this question is simply this: whether contention interrogatories may be used early in the discovery process must be decided on a case by case basis. While Indiana agrees with the latter statement, we have placed no "burden of justification" upon propounders for use of contention interrogatories early in the proceedings. Such questions are addressed to the trial court's sound discretion.

Here, it is readily apparent the Owen Circuit Court in its discretion has determined use of such discovery at this early stage of the proceedings will be beneficial

to the process rather than detrimental. Thus we must determine whether the Owen Circuit Court has abused its discretion by ordering Amax to answer the complained of discovery requests at this early stage of discovery. We determine it has not.

As to the scope of discovery, Ind.Trial Rule 26(B)(1) reads, in part:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, ... including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence....

As to sequence and timing, T.R. 26(D) says:

(D) *Sequence and Timing of Discovery.* Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery *may be used in any sequence* and the fact that a party is conducting discovery, whether by deposition or otherwise, *shall not operate to delay any other party's discovery....* (Emphasis supplied).

Clearly, the sequence and timing of discovery has been left to the almost unlimited discretion of the trial court when challenged by the parties in such cases.

Amax, in effect, claims it will be unduly burdened if forced to comply with the Adams group's discovery requests this early in the discovery process, but also advises us, (a) the current suit is but one of a series of lawsuits it is defending of the same general nature, and (b) the parties have just concluded an extensive series of administrative hearings during which much of the same discovery was had. The trial court, in its discretion, readily could have determined under these circumstances, answers to the Adams group's discovery here

questioned are in fact immediately available to Amax, and response thereto will not in actual fact be unduly burdensome because response has already been made elsewhere.

■■■ Amax next argues this discovery, seeking "all documents" and "all facts" "supporting" or "relating to" its pleading denials and affirmative defenses, improperly requires disclosure of its attorneys' mental impressions and work product. Amax suggests, as to both the questioned interrogatories and requests for production, compliance will force its counsel to reveal their mental impressions, conclusions, opinions, and legal theories. As to the questioned interrogatories, we disagree because that objection is not available to Amax.

T.R. 33 says, in part:

> (D) Scope—Use at Trial ... An interrogatory otherwise proper is not objectional merely because an answer to the interrogatory involves an opinion, contention, or legal conclusion,....

It is equally clear a party may compel his opponent to disgorge whatever facts he has in his possession, *Hickman v. Taylor* (1947) 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451, even though they may be contained in a document which is not itself discoverable. *Burr v. United Farm Bureau Mutual Ins. Co.* (1990), Ind.App., 560 N.E.2d 1250, 1257, *trans. denied; Eoppolo v. National R.R. Passenger Corp.* (1985), E.D.Pa., 108 F.R.D. 292, 294. The trial court, thus, did not abuse its discretion by ordering Amax to answer the questioned interrogatories.

■■ The Adams group's request for production of documents is a closer question, however. A representative sampling of the group's requests in this regard read as follows:

> Pursuant to the foregoing, plaintiffs request production of the following documents and tangible things:

#### 1.

> Each document containing, discussing or relating to facts or other information supporting your denial of paragraph 19 of the complaint ...

#### 30.

> Each document containing, discussing or relating to facts or other information supporting the ˙ THIRD DEFENSE of your answer....

(R. 115, 120). It is readily apparent if Amax is required to comply with such production requests, its attorneys will be required to select from the apparently vast array of Amax's discoverable documents the ones they considered pertinent when formulating Amax's pleading responses to the Adams group's complaint.

At the outset we point out, all the documents the group requests are discoverable. *Hickman, Burr, Id.* The narrow question is whether the discovery rules require Amax's attorneys to make the selections the group requests. We think not.

T.R. 26(B) mandates the courts to protect against the disclosure of an attorney's "mental impressions, conclusions, opinions, or legal theories...." Further, *Hickman* itself, the bellwether in this area, says, in part:

> Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney....

*Hickman, Id.* 329 U.S. at 510, 67 S.Ct. at 393; and Justice Jackson, advancing another reason in his concurring opinion, said:

> Discovery was hardly intended to enable a learned profession to perform its functions ... on wits borrowed from the adversary.

*Hickman, Id.* at 516, 67 S.Ct. at 396. *Accord, Upjohn Co. v. United States* (1981), 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584.

In a securities fraud class action suit, defendant company's attorneys had prepared its president (Sporck) for an expected week long deposition in part by showing him an unknown number of documents they had selected from the more than 100,-000 defendant had produced for copying by plaintiffs. The documents so selected were compiled, placed in a file folder by counsel, and transported to California solely for the deposition. None of the individual doc-

uments contained work product of defense counsel. Plaintiffs subsequently requested production of "all documents examined, reviewed or referred to by [Sporck] in preparation for ... his deposition...." Sporck's counsel objected on work product grounds. The 3rd United States Circuit there said:

Because identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions, petitioner argues that identification of the documents as a group must be prevented to protect defense counsel's work product. We agree ...

Opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses. (Citing precedent). Such material is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases.

*Sporck v. Peil* (1985), C.A.3, 759 F.2d 312, 316, *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230. Although federal precedent does not bind us, we believe the logic of this well-reasoned case is compelling.

The requests at issue here ask Amax, obviously acting through its attorneys, to select from all the documents properly discoverable in this case those which Amax's attorneys have determined contain, discuss, or relate to the various pleading responses it advanced on Amax's behalf. Clearly, the selection process the group requests is inextricably interwoven and an inseparable part of the "mental impressions, conclusions, opinions, [and] legal theories" of Amax's attorneys which T.R. 26(B)(3) mandates we protect from forced disclosure. In this regard only, the trial court erred.

Next, Amax claims the language used in the Adams group's questioned interrogatories and requests for production of documents such as "all facts" or "all documents" "supporting" or "relating to",

is "vague and ambiguous" in that it does not describe the subject items or categories "with reasonable particularity." We disagree.

In *American Bldgs. Co. v. Kokomo Grain Co., Inc.* (1987), Ind.App., 506 N.E.2d 56, 64, *trans. denied,* we specifically approved use of the term "regarding" where a party had requested "all investigative reports ... regarding the six other building collapses referred to in response to previous Interrogatories...." We there held "regarding" passed T.R. 34(B)'s "reasonable particularity" muster. Likewise as to the particular language questioned here. As we noted in *Kokomo,* quoting Professor Miller, "the party from whom discovery is sought will have no difficulty in understanding what is wanted." *Kokomo,* 506 N.E.2d at 64. That language simply affirms the inherent requirement the parties use common sense when complying with pretrial discovery requests.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

CHEZEM and ROBERTSON, JJ., concur.