


FILED

Mar 27 2026, 8:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Munster Medical Research Foundation, Inc., d/b/a Munster Community Hospital,

*Appellant-Defendant*

v.

Melodyann Clark, Individually and as Personal Representative of the Estate of Terry F. Clark Jr., Deceased,

*Appellee-Plaintiff*

---

March 27, 2026

Court of Appeals Case No.
25A-CT-1827

Appeal from the Lake Superior Court

The Honorable Calvin D. Hawkins, Judge

Trial Court Cause No.
45D02-2409-CT-001132

---

**Opinion by Judge Felix**

Judges Brown and Scheele concur.

**Felix, Judge.**

## Statement of the Case

Terry Clark Jr. died from an aortic dissection, and his widow, Melodyann Clark—individually and as personal representative of Terry's estate (the "Estate")—sued Munster Medical Research Foundation d/b/a Munster Community Hospital (the "Hospital") and others for medical malpractice. During discovery, a dispute developed regarding the Hospital's objections to the Estate's requests for admissions. Unable to resolve their dispute informally, the parties turned to the trial court. After a hearing, the trial court ordered the Hospital to respond to the requests and ordered the Hospital to pay the Estate's fees related to the motion to compel. The Hospital now brings this interlocutory appeal, raising two issues for our review:

1. Whether the trial court abused its discretion by ordering the Hospital to respond to the Estate's requests for admissions; and
2. Whether the trial court erred by ordering the Hospital to pay for the Estate's fees related to the motion to compel.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[3] On September 22, 2018, 45-year-old Terry, who had a history of thoracic aortic aneurysm, went to the Hospital for chest pains.[1] After undergoing a computed tomography scan-angiography (a "CTA"), Terry was sent home. Terry "return[ed] to the emergency department within a day or so" and died soon thereafter from an "aortic dissection [that] went undetected." Tr. Vol. II at 6. In May 2020, the Estate submitted a proposed complaint to the Indiana Department of Insurance. During the ensuing Medical Review Panel (the "Panel") process, the Estate deposed the emergency room doctor and radiologist. In July 2024, the Panel issued its opinion "find[ing] against the Hospital," *id.* at 7.

[4] Thereafter, on September 20, 2024, the Estate filed its complaint against the Hospital and others for medical malpractice relating to Terry's death. On September 27, the Hospital filed its answer.

[5] On November 13, the Estate propounded ten requests for admissions (the "Requests") on the Hospital. The Estate did not define any of the terms it used

---

[1] There is no evidence in the Transcript or Appendix concerning (1) Terry's hospitalizations and death, and (2) the Medical Review Panel proceedings. The facts as we have presented them here are drawn from representations made by the parties in their motion to compel briefing and by the Estate at the motion to compel hearing.

in the Requests. This became a major point of contention when, on February 6, 2025,[2] the Hospital responded to the Requests as follows:

> **Request No. 1:** That on September 22, 2018 when radiology technologist Goce Lazoski, RT selected the protocol for Terry Clark, Jr.'s CT angiogram Goce Lazoski was in the course and scope of his employment with Defendant Munster Medical Research Foundation d/b/a Community Hospital.
>
> **Response: Defendant admits that Goce Lazoski, RT was working as Defendant's employee on September 22, 2018. Defendant is without sufficient information to admit or deny the remaining allegations and statements contained in this Request and therefore denies the same.**
>
> **Request No. 2:** That on September 22, 2018 when emergency medicine physician Rikin Shah, D.O. ordered Terry Clark, Jr.'s CT angiogram the indication for the study selected by Dr. Shah was thoracic aortic aneurysm (TAA), follow up.
>
> **Response: Defendant objects to this Request because it (1) does not seek to conclusively establish, and withdraw from contention, a material fact at issue; (2) is not posed for the purposes of conclusively establishing a fact that is within the mutual knowledge of the parties so as to narrow the issues for trial which are not in dispute but instead seeks to discover facts or contentions; and (3) is unduly burdensome because it is inartfully drafted, imprecise, and unduly ambiguous since the**

---

[2] The Hospital received an extension of time for its responses.

terms *"indication" and "selected"* are subject to multiple alternative interpretations.

**Request No. 3:** That on September 22, 2018 when emergency medicine physician Rikin Shah, D.O. ordered Terry Clark, Jr.'s CT angiogram the indication for the study selected by Dr. Shah was not pulmonary embolism.

**Response: Defendant objects to this Request because it (1) does not seek to conclusively establish, and withdraw from contention, a material fact at issue; (2) is not posed for the purposes of conclusively establishing a fact that is within the mutual knowledge of the parties so as to narrow the issues for trial which are not in dispute but instead seeks to discover facts or contentions; and (3) is unduly burdensome because it is inartfully drafted, imprecise, and unduly ambiguous since the terms *"indication" and "selected"* are subject to multiple alternative interpretations.**

**Request No. 4:** That the manner in which radiology technician Goce Lazoski, RT selected the protocol for Terry Clark, Jr.'s CT angiogram on September 22, 2018 was not tailored or protocoled in the manner for evaluating the thoracic aorta or an aortic dissection.

**Response: Defendant objects to this Request because it (1) does not seek to conclusively establish, and withdraw from contention, a material fact at issue; (2) is not posed for the purposes of conclusively establishing a fact that is within the mutual knowledge of the parties so as to narrow the issues for trial which are not in dispute but instead seeks to discover facts or contentions; and (3) is unduly burdensome because it is inartfully drafted, imprecise, and unduly ambiguous since the terms *"manner," "selected," "protocol," "tailored," "protocoled,"***

and "evaluating" are subject to multiple alternative interpretations.

**Request No. 5:**  That on September 22, 2018 when Terry Clark, Jr.'s CT angiogram was provided to radiologist Justin Spackey, M.D., nobody from the Community Hospital staff furnished Dr. Spackey with the indications of use for the CT angiogram.

**Response:  Defendant objects to this Request because it (1) does not seek to conclusively establish, and withdraw from contention, a material fact at issue; (2) is not posed for the purposes of conclusively establishing a fact that is within the mutual knowledge of the parties so as to narrow the issues for trial which are not in dispute but instead seeks to discover facts or contentions; and (3) is unduly burdensome because it is inartfully drafted, imprecise, and unduly ambiguous since the terms *"provided," ["]nobody," "furnished," and "indications of use"* are subject to multiple alternative interpretations.**

**Request No. 6:**  That on September 22, 2018 at Community Hospital the radiology technician Goce Lazoski, RT selected the pulmonary embolism protocol for Terry Clark, Jr.'s CT angiogram.

**Response:  Defendant objects to this Request because it (1) does not seek to conclusively establish, and withdraw from contention, a material fact at issue; (2) is not posed for the purposes of conclusively establishing a fact that is within the mutual knowledge of the parties so as to narrow the issues for trial which are not in dispute but instead seeks to discover facts or contentions; and (3) is unduly burdensome because it is inartfully drafted, imprecise, and unduly ambiguous since the terms *"selected" and "protocol"* are subject to multiple alternative interpretations.**

**Request No. 7:**  That on September 22, 2018 at Community Hospital the radiology technician Goce Lazoski, RT should have selected the thoracic aortic aneurysm (TAA) protocol for Terry Clark, Jr.'s CT angiogram.

**Response:  Defendant objects to this Request because it (1) does not seek to conclusively establish, and withdraw from contention, a material fact at issue; (2) is not posed for the purposes of conclusively establishing a fact that is within the mutual knowledge of the parties so as to narrow the issues for trial which are not in dispute but instead seeks to discover facts or contentions; (3) is unduly burdensome because it is inartfully drafted, imprecise, and unduly ambiguous since the terms *"should have," "selected,"* and *"protocol"* are subject to multiple alternative interpretations; and (4) invades or seeks to invade the opinion work product of Defendant's counsel by purporting to require that such counsel undertake a legal analysis of whether radiology technician Goce Lazoski, RT "should have selected" the TAA "protocol" so that any response to this Request would reveal the mental impressions, conclusions, opinions, legal theories, and legal analyses of or by such counsel contrary to applicable law including T.R. 26 and *Amax Coal Co. v. Adams*, 597 N.E.2d 350 (Ind. Ct. App. 1992).**

**Request No. 8:**  The CT angiogram on September 22, 2018 at Community Hospital for Terry Clark, Jr. was protocoled in a manner that the contrast density was within the pulmonary arteries predominantly.

**Response:  Defendant objects to this Request because it (1) does not seek to conclusively establish, and withdraw from contention, a material fact at issue; (2) is not posed for the purposes of conclusively establishing a fact that is within the mutual knowledge of the parties so as to narrow the issues for**

trial which are not in dispute but instead seeks to discover facts or contentions; and (3) is unduly burdensome because it is inartfully drafted, imprecise, and unduly ambiguous since the terms *"protocoled," "in a manner," and "predominantly"* are subject to multiple alternative interpretations.

**Request No. 9:** That on September 22, 2018 Goce Lazoski, RT deviated from the applicable standard of care by selecting the pulmonary embolism protocol for Terry Clark, Jr.'s CT angiogram.

**Response: Defendant objects to this Request because it (1) does not seek to conclusively establish, and withdraw from contention, a material fact at issue; (2) is not posed for the purposes of conclusively establishing a fact that is within the mutual knowledge of the parties so as to narrow the issues for trial which are not in dispute but instead seeks to discover facts or contentions; (3) is unduly burdensome because it is inartfully drafted, imprecise, and unduly ambiguous since the terms *"selecting" and "protocol"* are subject to multiple alternative interpretations; and (4) invades or seeks to invade the opinion work product of Defendant's counsel by purporting to require that such counsel undertake a legal analysis of whether radiology technician Goce Lazoski, RT "should have selected" the TAA "protocol" so that any response to this Request would reveal the mental impressions, conclusions, opinions, legal theories, and legal analyses of or by such counsel contrary to applicable law including T.R. 26 and *Amax Coal Co. v. Adams*, 597 N.E.2d 350 (Ind. Ct. App. 1992).**

**Request No. 10:** That on September 22, 2018 Goce Lazoski, RT deviated from the applicable standard of care by not selecting the thoracic aortic aneurysm protocol for Terry Clark, Jr.'s CT angiogram.

**Response: Defendant objects to this Request because it (1) does not seek to conclusively establish, and withdraw from contention, a material fact at issue; (2) is not posed for the purposes of conclusively establishing a fact that is within the mutual knowledge of the parties so as to narrow the issues for trial which are not in dispute but instead seeks to discover facts or contentions; (3) is unduly burdensome because it is inartfully drafted, imprecise, and unduly ambiguous since the terms *"selecting" and "protocol"* are subject to multiple alternative interpretations; and (4) invades or seeks to invade the opinion work product of Defendant's counsel by purporting to require that such counsel undertake a legal analysis of whether radiology technician Goce Lazoski, RT "should have selected" the TAA "protocol" so that any response to this Request would reveal the mental impressions, conclusions, opinions, legal theories, and legal analyses of or by such counsel contrary to applicable law including T.R. 26 and *Amax Coal Co. v. Adams*, 597 N.E.2d 350 (Ind. Ct. App. 1992).**

Appellant's App. Vol. II at 43–46 (emphases in original).

[6] On February 10, the Estate sent a letter to the Hospital "tak[ing] issue with" the Hospital's qualified response to Request 1 and objections to Requests 2 through 10. Appellant's App. Vol. II at 47. The Estate noted that the Hospital's qualified response to Request 1 "failed to comply with" Indiana Trial Rule 36[3]

---

[3] The version of Indiana Trial Rule 36 in effect in 2025 provided in relevant part that the "answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny or that the inquiry would be unreasonably burdensome." Ind. Trial Rule 36(A) (effective Jan. 1, 1982, to Dec. 31, 2025). The current version of Trial Rule 36—which went into effect on January 1, 2026—essentially retains this requirement. T.R. 36(D); *see also* Order Amending Rules of Trial Procedure, No. 25S-MS-5 (Ind. Sept. 9, 2025).

and that the Hospital's partial denial was not "supported by any evidence." *Id.* at 50. As to the remaining Requests, the Estate pointed to the physicians' depositions that were taken during the Panel proceedings and the Hospital's submission to the Panel (the "Submission"). Regarding the latter, the Estate reminded the Hospital that it had used the words "indication" and "protocol"—some of the same words with which it was now claiming were "unduly ambiguous" and "imprecise." *Id.* at 48–50. On February 14, the Estate and the Hospital had a telephonic conference to resolve the discovery dispute, but no resolution was reached.

[7] On March 21, the Estate deposed Lazoski, after which the Estate asked the Hospital to amend its responses to the Requests based upon Lazoski's testimony. The Hospital did not do so. So, on April 25, the Estate filed a motion to compel the Hospital to answer the Requests; the Estate also requested an award of expenses related to its motion. In its response, the Hospital raised new objections to the Requests, arguing they were not "proportional," Appellant's App. Vol. II at 86, and were not served for a proper purpose.

[8] After a hearing, the trial court found and ordered as follows:

> 1. That [the] Hospital is hereby Ordered to either admit or deny without objection, qualification or evasion all ten (10) of the Requests for Admission previously propounded within thirty (30) days of this Order or they shall be deemed admitted by operation of law.

2. That there being no substantial justification for [the Hospital]'s objections to the Requests for Admission, an award of expenses and attorney[s'] fees is warranted pursuant to Ind. Trial Rule 36, 37 and [the Estate]'s Affidavit filed on June 16, 2025. As a consequence[,] expenses and attorney[s'] fees in the amount of $5,694.80 (Five Thousand Six Hundred Ninety-Four Dollars and Eighty Cents) shall be paid by [the Hospital] to [the Estate]'s counsel for having to bring this matter before the Court.

Appellant's App. Vol. II at 13–14. The Hospital successfully sought a stay of this order and initiated this interlocutory appeal as of right pursuant to Indiana Appellate Rule 14(A)(1).

## Discussion and Decision

[9] The Hospital challenges the trial court's discovery order and sanction. *See AMW Invs., Inc. v. Town of Clarksville*, 246 N.E.3d 1213, 1218–19 (Ind. 2024) (holding a party may challenge a contempt sanction and underlying discovery order on interlocutory appeal). "We review discovery orders and discovery sanctions for an abuse of discretion." *Id.* at 1222 (citing *State v. Int'l Bus. Machs. Corp.*, 964 N.E.2d 206, 209 (Ind. 2012); *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 751 (Ind. 2018)). An abuse of discretion occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Jennings v. Smiley*, 249 N.E.3d 1071, 1075 (Ind. 2025) (quoting *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015)), *reh'g denied* (Mar. 25, 2025). "This deferential standard gives way to de novo review when it comes to interpreting our trial rules." *Id.* (citing *Minges v. State*, 192 N.E.3d 893, 896 (Ind. 2022)).

[10] First, we address the Hospital's challenge to the discovery order. Second, we address the Hospital's challenge to the discovery sanction.

### 1. The Trial Court Did Not Abuse Its Discretion by Ordering the Hospital to Answer the Requests

[11] The Hospital first argues that the trial court abused its discretion by ordering the Hospital to admit or deny the Requests without objection, qualification or evasion. Requests for admissions are governed by Trial Rule 36, which at all times relevant hereto provided that a "party may serve upon any other party a written request for the admission . . . of the truth of any matters within the scope of Rule 26(B) set forth in the request." Ind. Trial Rule 36(A) (effective Jan. 1, 1982, to Dec. 31, 2025). Where, as here, the requesting party requests an order concerning the answering party's objections, the trial court must determine whether the objections are justified. *Id.* If the trial court concludes that an objection is not justified, "it shall order that an answer be served," or it may "determine that final disposition of the request be made at a pre-trial conference or at a designated time prior to trial." *Id.*

[12] The Hospital specifically argues that the trial court abused its discretion because its objections to Requests 2 through 10 were justified.[4] We address this

---

[4] On appeal, the Hospital does not argue that its response to Request 1 complied with Trial Rule 36. *See* T.R. 36(A) (effective Jan. 1, 1982, to Dec. 31, 2025) (providing that answers to requests must comply with Trial Rule 36, and further providing that the "answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states" (1) "that he has made reasonable inquiry" and (2) "that the information known or readily obtainable by him is insufficient to enable him to admit or deny or that the inquiry would be unreasonably burdensome"). The Hospital has thus waived any challenge to the trial

argument in two parts:  (a) First, we address the original objections the Hospital raised in its responses to the Requests.  (b) Second, we address the additional objections the Hospital raised in its opposition to the Estate's motion to compel.

### a.  Original Objections

In its response to the Requests, the Hospital raised the following two objections to Requests 2 through 10:  (i) they are "unduly burdensome because [they are] inartfully drafted, imprecise, and unduly ambiguous since [certain identified] terms . . . are subject to multiple alternative interpretations"; and (ii) they do "not seek to conclusively establish, and withdraw from contention, a material fact at issue" but were instead "posed for the purposes of . . . discover[ing] facts or contentions."  Appellant's App. Vol. II at 43–46.  We address each objection in turn.[5]

### i.  Inartfully Drafted

Trial Rule 36 "squarely places a burden upon the answering party to establish a 'fact' for the requesting party's cause of action."  *F.W. Means & Co. v. Carstens*, 428 N.E.2d 251, 257 (Ind. Ct. App. 1981) (footnote omitted).  Consequently, the requesting party bears "the burden of 'artfully draft[ing] the statement of

court's ruling concerning its response to Request 1.  *See* Ind. Appellate Rule 46(A)(8)(a); *Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023) (quoting *Dridi v. Cole Kline LLC*, 172 N.E.3d 361, 364 (Ind. Ct. App. 2021)).

[5] The Hospital also objected to Requests 7, 9, and 10 on the basis that they "invade[] or seek[] to invade the opinion work product of [the Hospital]'s counsel."  Appellant's App. Vol. II at 45–46.  On appeal, the Hospital does not argue that this objection was justified.  The Hospital has thus waived any challenge to the trial court's ruling concerning this objection.  *See* App. R. 46(A)(8)(a); *Miller*, 212 N.E.3d at 657 (quoting *Dridi*, 172 N.E.3d at 364).

fact contained in the request for admission' in such a manner that is precise, unambiguous, and not misleading to the answering party." *Walker v. Emps. Ins. of Wausau*, 846 N.E.2d 1098, 1102 (Ind. Ct. App. 2006) (quoting *Weldy v. Kline*, 652 N.E.2d 107, 110 (Ind. Ct. App. 1995)); *see also F.W. Means & Co.*, 428 N.E.2d at 257. "A request for admission is ambiguous if it is subject to more than one reasonable interpretation. But it must also be understood in the context of the law that applies to the case." *Walker*, 846 N.E.2d at 1103.

[15] The Hospital took issue with the following terms in the Requests: "indication," "indications of use," "protocol," "protocoled," "tailored," "selected," "selecting," "provided," "furnished," "evaluating," "manner," "in a manner," "predominantly," "should have," and "nobody." Appellant's App. Vol. II at 43–46. In particular, the Hospital objected to the use of these terms because they are all "subject to multiple alternative interpretations." *Id.*

[16] "Indication" generally means something that serves to show, point out, or demonstrate the necessity or advisability of another thing.[6] "Indication" is used in this way in Requests 2, 3, and 5 as well as in the Hospital's Submission to the Panel: "Dr. Shah noted that the *indications* for the CTA were 'Thoracic aortic aneurysm (TAA) follow up,'" and "Dr. Shah . . . ordered a Chest CTA at 8:37 p.m. with an *indication* of 'Thoracic aortic aneurysm (TAA) follow up.'"

---

[6] *Indication*, MERRIAM-WEBSTER.COM DICTIONARY (Jan. 25, 2026), https://www.merriam-webster.com/dictionary/indication; *Indicate*, MERRIAM-WEBSTER.COM DICTIONARY (Jan. 24, 2026), https://www.merriam-webster.com/dictionary/indicate.

Appellant's App. Vol. II at 28 (emphases added).[7] Similarly, on December 16, 2021, Dr. Shah testified in a deposition that he "personally, under orders, type[d] in CT angio chest and then click[ed] on CT angio chest and then put in [his] *indication* of thoracic aortic aneurysm." *Id.* at 69 (emphasis added).

[17] "Protocol" generally means "a system of rules that explain the correct conduct and procedures to be followed" in a particular situation,[8] which is how it is used in Requests 4, 6, 7, 8, 9, and 10. Furthermore, in its letter to the Hospital regarding the Requests and objections, the Estate asserted that the Hospital also used the word "protocol" in the Submission, *id.* at 50; the Hospital does not dispute this.

[18] The rest of the challenged terms appear to be used in their ordinary sense in the context of the Requests. Nevertheless, the Hospital asserts that "indication," "selecting," "selected," "protocol," "protocoled," "manner," "tailored," "evaluating," "provided," and "furnished" all "have distinct technical uses that may or may not agree with their common definitions." Appellant's Br. at 26. Dooming its argument, the Hospital does not elaborate on this contention and does not provide any of the alleged "distinct technical" definitions, *id.*, or "alternative interpretations," Appellant's App. Vol. II at 43–45, of any of these

---

[7] The Submission itself is not in the record; instead, we have only the excerpts the Estate included in its motion to compel briefing in this case. The Hospital does not dispute the accuracy of those excerpts, so we assume they are true and authentic.

[8] *Protocol*, MERRIAM-WEBSTER.COM DICTIONARY (Jan. 13, 2026), https://www.merriam-webster.com/dictionary/protocol.

terms except for "protocol." In offering a different definition for "protocol," the Hospital points to an excerpt of Lazoski's deposition, Appellant's Br. at 26, which occurred *after* the Hospital lodged the inartful-drafting-objections. Furthermore, the Hospital's attempt to show that "protocol" may have been a word that Lazoski used differently than the physicians is not persuasive.

[19]     Based on the foregoing, we cannot say any of the challenged terms are imprecise, ambiguous, or misleading such that they render any of the Requests subject to more than one reasonable interpretation. In other words, the Estate's use of the challenged terms did not amount to inartful drafting. The trial court thus did not abuse its discretion by determining the Hospital's inartful drafting objections were unjustified.

### ii. Posed to Discover Facts or Contentions

[20]     "An important purpose of Rule 36 is to more quickly and efficiently reach a resolution based on the actual facts." *Garrett v. Nissan of Lafeyette, LLC*, 216 N.E.3d 496, 502–03 (Ind. Ct. App. 2023) (alterations omitted) (citing *Costello v. Zavodnik*, 55 N.E.3d 348, 353 (Ind. Ct. App. 2016), *reh'g denied*; *Fairland Recreational Club, Inc. v. Indianapolis Downs, LLC*, 818 N.E.2d 100, 101–02 (Ind. Ct. App. 2004)), *reh'g denied* (Oct. 4, 2023); *see also Gen. Motors Corp., Chevrolet Motor Div. v. Aetna Cas. & Sur. Co.*, 573 N.E.2d 885, 888 (Ind. 1991), *reh'g denied*. Trial Rule 36 "is part of an overarching preference of our court system: when possible, to resolve cases on the merits. The rule seeks to streamline the process by allowing parties to essentially stipulate to matters which are not seriously in dispute . . . ." *Garrett*, 216 N.E.3d at 503. Thus, requests for admissions are not

the proper vehicle for discovering unknown facts. *Yount v. Carpenter Co.*, 219 N.E.3d 127, 132 (Ind. Ct. App. 2023) (quoting *Ind. Constr. Serv., Inc. v. Amoco Oil Co.*, 533 N.E.2d 1300, 1301 (Ind. Ct. App. 1989)). When requests for admissions are used properly, they "simplify pre-trial investigation and discovery, facilitate elimination of unnecessary evidence at trial, and reduce the time and expense demands upon the parties, their counsel[,] and the courts." *Gen. Motors*, 573 N.E.2d at 888.

[21]    The Hospital argues that "the Requests improperly sought to discover information that the Estate did not know" because "the Estate did not know and could not know what the terms it was using in the Requests at the time it made them" meant, as demonstrated by "Lazoski's deposition[, which] revealed a different understanding of those terms." Appellant's Br. at 28. The Hospital further explains that if it had "made the admissions sought by the Estate, it would have 'discovered' the meaning of the terms as ascribed to them by the Estate and not their actual meanings under the facts and circumstances of this case." *Id.* at 29; *see also* Appellant's App. Vol. II at 88. In essence, the Hospital's improper-use objection is a rehashing of its inartful drafting objection. As discussed above, the Requests were not inartfully drafted. *See supra* ¶¶ [14]–[19]. So we cannot agree that the Hospital would have discovered the plain meanings of the challenged terms by admitting or denying the Requests. The trial court thus did not abuse its discretion by determining the Hospital's proper use objections were unjustified.

### b. *Additional Objections*

In opposing the Estate's motion to compel, the Hospital raised two new objections to the Requests: (i) the Requests were not tendered for a proper purpose; and (ii) the Requests were not "proportional," Appellant's App. Vol. II at 86. At the hearing on its motion to compel and on appeal, the Estate argues that pursuant to *AMW Investments v. Town of Clarksville*, 246 N.E.3d 1213 (Ind. 2024), the Hospital waived all these objections by failing to raise them when it responded to the Requests. We agree that the additional objections were not timely raised, nor were they reasonable extensions of the timely raised objections. However, even if a written discovery objection is untimely, a trial court may excuse the tardiness. *AMW Investments*, 246 N.E.3d at 1222. Here, the trial court appears to have addressed the objections on their merits and concluded that these objections were not justified. We therefore address each of the additional objections in turn.

### i. Proper Purpose

As explained in more detail above, *see supra* ¶ [20], requests for admissions permit parties to identify "legal contentions and issues for which evidentiary proof will not be necessary." *Yount*, 219 N.E.3d at 132 (quoting *Gen. Motors*, 573 N.E.2d at 888). When used properly, requests for admissions streamline discovery and trial by reducing the time and expense for the parties and the trial court. *Id.* (quoting *Gen. Motors*, 573 N.E.2d at 888).

At the motion-to-compel stage, the Hospital asserted that the Requests were "cumulati[ve] and duplicati[ve of] other discovery" and were meant to "avoid[] the burdens and costs of proving" the Estate's case.[9]  Appellant's App. Vol. II at 89.  In support, the Hospital pointed to (1) when the Estate served the Requests, (2) the similarity between some of the Requests and certain allegations in the complaint, and (3) another Trial Rule the Estate could have used.  We address each objection in turn.

**When the Requests Were Served.**  The Hospital argued that the Requests were "premature" because they were served "just 55 days" after the Hospital answered the complaint, Appellant's App. Vol. II at 89 (emphasis omitted), and "were issued while fact and expert discovery remain ongoing," *id.* at 81.  Under the relevant version of Trial Rule 36, a request for admission "may, without leave of court, be served . . . upon any other party with or after service of the summons and complaint upon that party."  T.R. 36(A) (effective Jan. 1, 1982, to Dec. 31, 2025).  The Estate was well within the timing confines of Trial Rule 36 when it served the Requests on the Hospital.[10]  And the Trial Rules do not require a party to use discovery mechanisms in a particular order.  *See generally*

---

[9] The Hospital also alleged that the Estate intended to use the Requests to "set[] up a misguided claim for attorney[s'] fees."  Appellant's App. Vol. II at 89.  The Hospital does not reassert this argument on appeal.

[10] The Estate would have been well within the timing confines of the current version of Trial Rule 36, as well. *See* T.R. 36(B) ("The request may, without leave of court, be served not earlier than ten days after the issues are first closed on the merits . . . .").

T.R. 26–37. That is especially true where, as here, discovery occurred before the lawsuit was ever filed.

[26]  **Similarity to Complaint.**  In opposing the motion to compel, the Hospital argued that the Requests "track[ed] the Complaint," and "[u]sing words like 'protocol' and mentioning Mr. Lazoski by name in the Subject Requests does not distinguish the . . . Requests from the allegations in the Complaint that [the Hospital] already denied."  Appellant's App. Vol. II at 90.  The Hospital did not state which Requests tracked which allegations in the complaint.  For the first time on appeal, the Hospital claims that Requests 9 and 10 track Paragraphs 2 and 6 of the complaint.  The Hospital's obvious waiver of this argument aside,[11] we cannot agree that Requests 9 and 10 track Paragraphs 2 and 6 of the complaint.

[27]  Request 9 states, "That on September 22, 2018 Goce Lazoski, RT deviated from the applicable standard of care by selecting the pulmonary embolism protocol for Terry Clark, Jr.'s CT angiogram."  Appellant's App. Vol. II at 41, 45.  Request 10 states, "That on September 22, 2018 Goce Lazoski, RT deviated from the applicable standard of care by not selecting the thoracic aortic aneurysm protocol for Terry Clark, Jr.'s CT angiogram."  *Id.* at 41, 45. Paragraph 2 of the complaint states, "At all material times herein, Defendants owed a duty and standard of care to their patient Terry F. Clark, Jr., breached

---

[11] It is well established that arguments raised for the first time on appeal are generally waived.  *Plank v. Cmty. Hosps. Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013) (quoting *Freytag v. C.I.R.*, 501 U.S. 868, 895 (1991)).

said duty and standard of care, were negligent, and caused injuries and damages." *Id.* at 15. Paragraph 6 states,

> Defendants Munster Community Hospital, Midwest Emergency Associates - Munster, LLC, and Munster Radiology Group, P.C. are jointly and severally liable for the negligence and breaches of duty of their partners, agents, and employees pursuant to the doctrine of *respondeat superior*, principal/agent and partnership law and for all damages and injuries to Plaintiff and Terry F. Clark, Jr.

*Id.* at 16. Neither of these Paragraphs are specifically about Lazoski, and neither say anything about a thoracic aortic aneurysm protocol for a CT angiogram. The Requests are much more specific than the Paragraphs and are not duplicative thereof.

[28] Finally, the Hospital cites to one case in support of its complaint-tracking objection: *Perez v. Miami-Dade County*, 297 F.3d 1255 (11th Cir. 2002). In *Perez*, the Court of Appeals for the Eleventh Circuit concluded that it was "inappropriate for a plaintiff to re-serve the complaint in the form of a request for admissions in order to 'require the defendant to admit or deny nearly every paragraph'" of a complaint the defendant had already answered. *Id.* at 1269 (collecting cases). The circumstances in *Perez* are not even close to the circumstances currently before us. The Requests were not so similar to the complaint in this case that the Hospital's complaint-tracking objection was justified. We leave for another day whether the tactic addressed in *Perez* is good-lawyering, frowned upon, or bad faith in Indiana.

**Alternate Methods.** The Hospital also maintained that the matters addressed by the Requests were better addressed via Trial Rule 16 stipulations. Trial Rule 16 requires parties in a civil case to meet and confer before a pre-trial conference about "stipulat[ing] in writing with reference to all facts and issues not in genuine dispute." T.R. 16(C)(3). Parties are not required to stipulate, *id.*, although the practice is favored, *Corbin v. State*, 713 N.E.2d 906, 908 (Ind. Ct. App. 1999) (citing *Gann v. State*, 570 N.E.2d 976, 978 (Ind. Ct. App. 1991), *trans. denied*; *Kelly v. State*, 527 N.E.2d 1148, 1153 (Ind. Ct. App. 1988), *summarily aff'd*, 539 N.E.2d 25, 26 (Ind. 1989)), *trans. denied*.

While the Hospital may have preferred to use Trial Rule 16 stipulations, the Estate was free to use Trial Rule 36 to obtain admissions. On this particular front, the Hospital does not get to dictate the Estate's litigation strategy.

**Summary.** None of the conduct the Hospital complains of indicates the Estate propounded the Requests for an improper purpose. Accordingly, the trial court did not err by determining the Hospital's improper purpose objection was unjustified.

### ii. Proportionality

Trial Rule 26(B)(1) "limits the scope of discovery to matters that are both relevant *and* proportional." *Jennings*, 249 N.E.3d at 1077 (emphasis in original). The Hospital argues that the Requests are not proportional under Trial Rule 26(B)(1)(iii), which provides that a discovery request may be limited if "the burden or expense of the proposed discovery outweighs its likely benefit." T.R.

26(B)(1)(iii) (effective Jan. 1, 2013, to Dec. 31, 2025).  In making this determination, the trial court "tak[es] into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  *Id.*

[33] **Needs of the Case.**  The Hospital argues the Requests do not serve the needs of the case because "the nature of [a] medical malpractice claim requires expert testimony to establish the standard of care, its breach, and causation."  Appellant's Br. at 24 (citing *Overshiner v. Hendricks Reg'l Health*, 119 N.E.3d 1124, 1126 (Ind. Ct. App. 2019), *reh'g denied* (Apr. 16, 2019), *trans. denied*, 132 N.E.3d 379 (Ind. 2019)).  According to the Hospital, the Estate is using the Requests to "short-circuit other discovery methods" and "sort through" alleged "inconsistencies" among its experts' opinions.  *Id.*

[34] It is undoubtedly true that "a medical malpractice plaintiff is ordinarily required to present expert opinion that a defendant health care provider's conduct fell below the applicable standard of care."  *Overshiner*, 119 N.E.3d at 1132 (citing *Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1201 (Ind. 2008)).  Without the benefit of expert opinion on the ultimate question of breach of duty, it would be nearly impossible for the trier of fact to apply the standard of care given the technical and complicated nature of medical treatment.  *Id.* (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1217–18 (Ind. 2000)).

[35] This is not to say that in a medical malpractice case, standard of care, breach, and causation cannot be established via requests for admissions. "Trial Rule 36 'permits a request for admission regarding an *opinion*, a *contention*, or a *legal conclusion*, if the request is related to the facts of the case.'" *Yount*, 219 N.E.3d at 133 (emphases added) (quoting *Gen. Motors*, 573 N.E.2d at 888). Thus, a medical malpractice defendant is free to admit or deny that it deviated from the applicable standard of care. *See id.* (quoting *Gen. Motors*, 573 N.E.2d at 888); T.R. 36(A) (effective Jan. 1, 1982, to Dec. 31, 2025) ("A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request . . . ."). Although expert testimony may typically be required to allow the trier of fact to decide whether the defendant's conduct fell below the relevant standard, Indiana does not prescribe how that testimony is presented—by traditional testimony, affidavit, stipulation, Trial Rule 36 admission, or other means.

[36] Furthermore, *Overshiner v. Hendricks Regional Health*—the case on which the Hospital relies—is a medical malpractice case in which the trial court granted a directed verdict because the plaintiffs failed to establish the applicable standard of care at trial, 119 N.E.3d at 1129–30. The plaintiffs sued the hospital where their daughter suffered post-birth complications. *Id.* at 1126. The plaintiffs' only expert was a retired neuropathologist, he admitted that he did not meet the relevant guidelines for testifying in the case, and he indicated he had never been involved in the handover between obstetrician and pediatrician after a child is born. *Id.* at 1127. This court affirmed the directed verdict, concluding that the

plaintiffs' expert did not testify to the standard of care required of obstetricians, pediatricians, and nursing staff. *Id.* at 1133. Thus, *Overshiner* is not particularly helpful or applicable in the context of a discovery dispute.

[37] Nevertheless, the Hospital argues that "in *any* medical malpractice case, requests for admissions addressing subjects within the scope of medical expert testimony *per se* do not address the needs of the case," Appellant's Reply Br. at 7 (emphases in original), because "the Medical Malpractice Act's panel review process is a state-mandated production of medical expert opinions designed to supply the need for expert opinions before litigation even begins," *id.* (citing I.C. § 34-18-10-22(b)). The existence of experts in a case does not automatically preclude a party's ability to avail itself of Trial Rule 36. *See* T.R. 26(B)(1)(iii) (effective Jan. 1, 2013, to Dec. 31, 2025) (requiring balancing of proposed discovery's burden and benefit). Just because evidence already exists concerning an issue does not necessarily mean that the parties cannot have the opportunity to streamline the litigation by determining whether there are serious disputes about that evidence or issue. *See Garrett*, 216 N.E.3d at 502–03 (quoting *Costello*, 55 N.E.3d at 353) (explaining an "important purpose" of T.R. 36 "is to quickly and efficiently reach a resolution based on the actual facts").

[38] The Hospital's reliance on *Himsel v. Indiana Pork Producers Ass'n*, 95 N.E.3d 101 (Ind. Ct. App. 2018), is also misplaced. In *Himsel*, the trial court denied a motion to compel production of documents from non-parties, finding the requests were "irrelevant, overbroad and onerous." *Id.* at 108. This court affirmed, concluding in relevant part that the requesting party had "already

acquired substantial evidence from other sources," the requested documents would have "little additional benefit to the Plaintiffs in proving their claims," and the requests placed a heavy burden on the non-parties because of the "sheer breadth of records the subpoenas asked [them] to comb over." *Id.* at 111. The discovery dispute in *Himsel* is not directly comparable to the discovery dispute in this case. The Estate is not seeking documents from a nonparty; it is seeking Trial Rule 36 admissions from the Hospital.

[39] **Amount in Controversy.** The Hospital states that the amount in controversy is "limited due to the damages caps." Appellant's Br. at 24 (citing I.C. § 34-18-14-3). According to the Estate, the applicable $1.65 million damages cap "is no mere limited sum." Appellee's Br. at 20.

[40] **Parties' Resources.** The Hospital claims the Estate has ample resources based on its retention of four experts in this case and will suffer less financial strain than the Hospital if the trial court's order is upheld. The Estate claims the Hospital has more resources and will not have to incur much expense to respond to the Requests. None of these claims are supported by citations to the record, *see* Ind. Appellate Rule 46(A)(8)(a) (requiring statements of fact be supported by record citations), and it appears no evidence was presented thereon during the motion to compel proceedings.

[41] **Importance of Issues at Stake.** The overarching issue at stake in this case is whether the Hospital is liable to the Estate for medical malpractice in treating Terry. The Hospital alleges that "[t]he importance of the issues at stake is based

on the need for expert testimony." Appellant's Br. at 24 (citing *Overshiner*, 119 N.E.3d at 1126). The Estate desires to streamline evidence at trial, especially facts about Lazoski selecting a protocol different from that ordered by the treating physician.

[42] **Importance of Requests in Resolving Issues.** The Hospital argues that the Requests have "no importance in resolving the issues in controversy because they do not reflect or confirm any outcome-determinative facts not in dispute." Appellant's Br. at 25. As the Estate points out, however, the Requests could be dispositive, depending on how the Hospital responds. This is true regardless of other discovery that has been conducted. *See Garrett*, 216 N.E.3d at 502–03 (quoting *Costello*, 55 N.E.3d at 353) (explaining an "important purpose" of T.R. 36 "is to quickly and efficiently reach a resolution based on the actual facts").

[43] **On Balance.** On this record, there is nothing that suggests the burden or expense of the Requests outweighs their likely benefit. The trial court did not abuse its discretion by determining that the Hospital's proportionality objection was unjustified.

### c. Conclusion

[44] Based on the foregoing, we cannot say the trial court abused its discretion by determining that the Hospital's objections to the Requests were not substantially justified. The trial court therefore did not abuse its discretion by ordering the Hospital to amend its responses to the Requests.

## 2. The Trial Court Erred by Sanctioning the Hospital Without First Providing an Opportunity for a Hearing or Holding a Hearing

[45] The Hospital argues that the trial court erred in awarding the Estate expenses related to its motion to compel without first holding a hearing. At the June 13 hearing on the Estate's motion to compel, the trial court indicated it was leaning toward granting the motion; gave the parties the opportunity to submit proposed orders no later than June 20; and stated it would issue an order "on or before June 25," Tr. Vol. II at 30. On June 16, the Estate submitted its proposed order and an affidavit sworn to under the penalties of perjury concerning motion-related expenses. The affidavit contained a narrative of expenses. Four days later, on June 20, the Hospital submitted its proposed orders—one denying the motion and one deferring the ruling. On June 25, the trial court issued its order granting the motion to compel *and* ordering the Hospital to pay the Estate $5,694.80.

[46] When a trial court grants a motion to compel responses to a request for admissions, it must award the requesting party its motion-related expenses, unless the responding party's opposition was substantially justified or an expenses award would be unjust. T.R. 36(A) (effective Jan. 1, 1982, to Dec. 31, 2025); *id.* 37(A)(4) (effective Jan. 1, 2008, to Dec. 31, 2025). Before awarding such fees, the trial court must provide an opportunity for a hearing. *Id.* 37(A)(4) (effective Jan. 1, 2008, to Dec. 31, 2025). It is error for a trial court to not hold a hearing on Trial Rule 37(A)(4) expenses, but such error may be harmless if

the responding party cannot show that "the lack of a hearing affected the sanction amount." *Sawyer*, 93 N.E.3d at 758.

[47] For example, in *Care Group Heart Hospital, LLC v. Sawyer*, the trial court awarded the plaintiff more than $27,000 in expenses as a sanction for defendant's discovery abuses. 93 N.E.3d at 757. The trial court held a hearing on defendants' failure to comply with the order compelling discovery; afterwards, the trial court "issued an order indicating that '[a]ny expenses, fees, or costs shall be determined when submitted by Plaintiff,' as discussed during the hearing." *Id.* at 758 (alteration in original). The plaintiff filed a "detailed fee request, including over fifty pages of spreadsheets itemizing and describing the expenses he sought to recover"; the defendants filed a response in which they explained why many of the expenses "fell outside of the court's discovery order"; and the plaintiff filed a reply. *Id.* The trial court failed to hold a hearing before entering the award, which was error. *Id.* The plaintiff appealed the award because it was less than he requested, but in arguing that he was entitled to a hearing under Trial Rule 37(A)(4), *id.* at 757–58, he could not point to any information "a hearing would have revealed that the record did not already supply," *id.* at 758. The Indiana Supreme Court concluded that the plaintiff failed to show he was prejudiced by the lack of a hearing, so the trial court's error in not holding a hearing was harmless. *Id.*

[48] Here, it is undisputed that the trial court did not hold a hearing on the Estate's Trial Rule 37(A)(4) fees. Although the parties generally discussed such expenses at the June 13 hearing on the Estate's motion to compel, the Estate

had not yet submitted any documentation regarding the specific fees it was requesting should it prevail on the motion to compel, and the trial court had not yet officially ruled on the motion to compel. In fact, at the hearing on the motion to compel, the following exchange occurred regarding the Estate's Trial Rule 37(A)(4) expenses:

> THE COURT: I read your motion before coming out here. I haven't heard any figures regarding your expenses.
>
> [THE ESTATE'S COUNSEL]: Oh, I'm sorry. What my understanding was, and I know I have more than ten hours into it up to this point, but if the Court finds in our favor, then my thought would have been that I would submit an affidavit of my time.
>
> THE COURT: All right. So you didn't prepare one?
>
> [THE ESTATE'S COUNSEL]: I did not for this hearing, Judge.
>
> THE COURT: All right.

Tr. Vol. II at 17.

[49] Because the trial court neither held a Trial Rule 37(A)(4) hearing nor gave the parties an opportunity for such a hearing, it was error for the trial court to award the Estate Trial Rule 37(A)(4) expenses. The question therefore becomes whether this error was harmless. *See Sawyer*, 93 N.E.3d at 758.

[50] The Hospital argues that it "had no opportunity to argue against the fee award" or "to cross-examine the fee affidavit." Appellant's Br. at 33. We must agree. Although the Hospital did not file a response to the Estate's affidavit or ask the trial court for time to respond thereto, it did not have much of an opportunity to do so; the trial court did not request a response from the Hospital on the Estate's fee affidavit, and it issued its sanctions order only nine days after the Estate submitted its affidavit. Importantly, in that affidavit, the Estate sought expenses related to Lazoski's deposition, and the Estate's counsel did not aver that his $350 hourly rate is reasonable. As to the former, the Hospital argues on appeal that "Lazoski was a fact witness" who may not have been deposed "solely in relation to bringing the motion to compel." *Id.* at 33–34. As to the latter, the Hospital argues on appeal that the Estate's attorneys' fees may not be reasonable and reasonableness is a requirement of Trial Rule 37(A)(4). It is apparent from the Hospital's appellate briefing that a hearing likely would have supplied information that the record—that is, the Estate's affidavit—did not.

[51] Moreover, unlike the plaintiff in *Sawyer* who challenged the lack of a Trial Rule 37(A)(4) hearing because he was dissatisfied with the amount of expenses awarded *to* him, the Hospital is challenging the lack of such a hearing because of the amount of expenses awarded *against* it. On a record such as this, the prejudice inherent in not holding a Trial Rule 37(A)(4) hearing is likely significant for the party paying motion-to-compel-related expenses. With only an affidavit summarizing the Estate's expenses, we do not have a fully fleshed out argument regarding whether and to what extent the requested expenses

were incurred in relation to the motion to compel, the reasonableness of those expenses, or any other arguments the parties deem relevant. The trial court's error in ordering the Hospital to pay the Estate's motion-related expenses without first providing an opportunity for a Trial Rule 37(A)(4) hearing or holding such a hearing was not harmless.

## Conclusion

In sum, the trial court did not abuse its discretion by ordering the Hospital to amend its responses to the Requests, but the trial court did err by sanctioning the Hospital without first providing an opportunity for a hearing or holding a hearing. We therefore affirm that part of the trial court's order requiring the Hospital to amend its responses to the Requests, reverse that part of the order imposing the sanction, and remand with instructions for the trial court to provide the parties an opportunity for a hearing or hold a hearing in accordance with Trial Rule 37(A)(4) (effective Jan. 1, 2008, to Dec. 31, 2025).

Affirmed in part, reversed in part, and remanded.

Brown, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Adam J. Sedia
Johnson & Bell, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Daniel B. Vinovich
Hilbrich Cunningham Dobosz
Vinovich & Sandoval, LLP
Highland, Indiana